Read®, J.
 

 The petitioners are persons of color, who together with their parents, had been slaves, and were emancipated by the Ordinance of the Convention. They were taken into custody by the defendant Russell, who claimed to hold them as apprentices, under an order of the County Court of Robeson purporting to bind the petitioners to him. The petitioners obtained a writ of
 
 habeas corpus
 
 returnable before Judge Giumur, who upon the hearing remanded them to the custody of the defendant.
 

 Two questions are involved in the case:
 

 1. Had the Judge, upon the hearing, the right to look behind the order of the County Court binding out the petititiouers ?
 

 His Honor was of the opinion that he was precluded by the order, and had no right to look to the merits of the case.
 

 In this we think there was error. The defendant, who claims the right to restrain the liberty of the petitioners, must show his authority. And when he shows the order of the County Court, the petitioners have the right to reply, that the order is void. And this they may do, either by showing that they were not such persons as the court had
 
 *93
 
 the power to bind out at all, or that they had no notice of the proceedings against them, and therefore, no opportunity of being heard. If judgment be rendered by a court having no jurisdiction, or against a person who has no notice to defend his rights, it is no judgment at all.
 
 Stallings
 
 v. Gully, 3 Jon., 344. And in
 
 Prue
 
 v.
 
 Hight,
 
 6 Jon., 265, this court did look behind the order of the County Court, to see whether the court had the power to make the order,
 
 i. e.
 
 had jurisdiction over the petitioner.
 

 2. Does the fact that the petitioners had no notice of the proceedings against them, and were not present when the order of the County Court was made, make the order of binding void ?
 

 We think it does. The constitution and laws of the country guarantee the principle, that no freeman shall be divested of a right by the judgment of a court, unless he shall have been made party to the proceedings in which it shall have been obtained.
 
 Armstrong
 
 v.
 
 Harshaw,
 
 1 Dev. 187.
 

 In all proceedings of a judicial nature, it is necessary that the person whose rights are to be affected should, in some way, be a party to the proceedings. It is not sufficient that the court should have jurisdiction of the subject matter, it must also have jurisdiction of the.person. It is a clear dictate of justice that no man shall be deprived of his rights of person or property, without the privilege of being heard.
 
 Stallings
 
 v.
 
 Gully, supra.
 
 And it is well settled, that judgment without service of process is void.
 

 The case of
 
 Owens
 
 v.
 
 Chaplain,
 
 3 Jon., 323, is relied on-as showing, that neither notice to the person to be bound nor his presence in court is necessary. It is true that in the opinion delivered in that case, it is said that “there is nothing in the statute requiring the presence of the orphan when the binding takes place, though it is usual.” But the case did not require that point to be decided. That case was
 
 *94
 
 this: An orphan had been bound out by the court, anda third person applied to the court to vacate the order binding out the orphan, and to bind him to that third person. The orphan was not moving in the matter himself, and of course the court refused to interfere at the instance of a third person who had no interest in the matter. So that we cannot give to that case the force of a decision upon this question. The case before us is at the instance of a person whose liberty has been affected by the order, and he has the right to raise the question. And we think it clear, that whether the statute requires it or not, the petitioners have a right upon general principle, to be present, or at least to have notice of the proceedings. And although the statute does not in terms require it, (which is probably all that was meant by the learned Judge in the case of
 
 Owens
 
 v. Ghaplain,) yet it is fairly to be inferred. The statute, sec.
 
 5,
 
 requires the master to give bond to
 
 produce the apprentice before the court
 
 whenever required. And in sec. 7 it is provided, that when a magistrate shall permit a house-keeper to employ an orphan, he shall take his “ recognizance
 
 to bring the said orphan to the next County Court,'’
 
 to be bound out. So that it seems clearly to be contemplated by the statute itself, that whenever it is necessary for the court to take any action in regard to orphans, the orphan shall be before the court.
 

 The proceedings oí our County Courts have been in a summary way, in binding out apprentices. And, although it has been usual to have the person to be bound present, yet we know from observation that it has not been invariably the case, still our courts have usually acted with consideration, and have guarded the rights of the apprentices and given satisfaction to society. And there have been as few complaints of the abuse of power in this as in any other exercise of duty by our courts. It could not well have been otherwise. We have had hitherto but few orphans to bind out. Of course we did not bind out .slaves, and there were
 
 *95
 
 but few free negroes, and indigent white children usually-found friends among their relatiions to take care of them. And in the few instances where binding was necessary, care was taken by the friends of the children, and by the court itself that the best that was possible should be done for the them. And besides, apprentices were never looked to as profitable, and were seldom taken except by those who felt some interest in their personal welfare, so that there were no inducements to frauds upon the courts.
 

 But now a very different state of things exists. The war has impoverished the country and made wrecks of the estates of orphans; its casualties have greatly increased their numbers; and one-third of the whole population are indigent colored persons. So that the exceptional cases which we formerly had must be greatly multiplied, and the responsibilities and duties of the County Courts must be increased in proportion. It is, therefore, of great importance that their duties and the rights of both apprentices and masters, in the proceedings ior binding, should be defined and understood. We have no hesitation in saying that in all cases of binding apprentices whether white or colored, it is the right of the persons to be bound, to have notice, and it is the duty of the court to see that they have notice; and it is, to say the least,
 
 prudent
 
 in the court to
 
 require
 
 that the persons should be present in court. There can be no case where notice can be dispensed with, and the actual presence of the person ought only to be dispensed with where he has intelligent friends present who can see that his interests are properly guarded.
 

 The case before us shows the propriety of what we have just said. Take the case as stated by Judge Gilliam: The petitioners are females, respectively thirteen and fifteen years of age, ages when they stand most in need of the oversight of their parents and friends. They are industrious, well behaved and amply provided for in food and
 
 *96
 
 clothing. They live with their mother and step father, who are of good character and are well to do. What interest had society in having these relations broken up, and themselves put under the care of strangers, with no affection for them, nor any other interest, except gain from their services. Now if these persons or their friends had been present when the application was made for their binding, would any court in the State have bound them out ? Of course not. It would have been a gross outrage if they had. A court ought not to, and will not, bind out an orphan unless it appear that its condition will be improved. It is a high duty of the court, and one which they perform with pleasure, to protect these helpless children, and not only to prevent oppression and fraud, but to act as friends and guardians, and improve their condition. I remember that when I was at the bar, the County Court of Granville had ordered sundry orphans to be brought to court to be bound out. Among them were three or four who ■were neat and clean, and their mother was with them. She cried much, but said not a word. Upon enquiring it was found that she was an honest, industrious woman and widow, who had labored hard for her children, and that just when they could begin to help her the rapacity of some bad man sought to take them away. Some gentleman of the bar suggested that, instead of taking away her children, there should bo a contribution to enable her to kt-cp them, and it was readily responded to by the court and the bar and the crowd, and a handsome sum was given to her, and she kept her children.
 
 There
 
 is shown the propriety of having the persons actually present in court, in order that the court may see their condition, the condition of their parents or friends who havo charge of them, and to hear their own simple story; and if binding be necessary, to sec their capacity and fitness for one employment and another, and also to give publicity to the matter,
 
 *97
 
 so as to invite applicants, in order that the court may-select the best masters.
 

 In the case before us it is manifest, from the statement of the case sent us, that the humane and .intelligent Judge, who heard the cause, would never have remanded the petitioners to the custody of the defendant, it lie had supposed that he had the right to look behind the order of binding, not so much perhaps for any fault in the defendant as because there was no propriety in taking them from the society and services of their parents and friends to bind them to any person.
 

 There was an interesting discussion at the bar as to the class with which the petitioners were to be put, supposing that they were liable to be bound out at all. Our statute, Rev. Code, ch. 5, sec. 1, passed before the war, provides that “It shall be the duty of the several Courts of Pleas and Quarter Sessions to bind out as apprentices all orphans whose estates are of so small value that no person will educate and maintain them for the profits thereof.” And after enumerating other classes, the statute proceeds: “Also the children of free negroes, where the parents with whom such children may live do not habitually employ their time in some honest, industrious occupation, and all free base born children of color.”
 

 But it is not necessary, and therefore it would be improper, for us to enter into the consideration of those questions, because whether they belong to one class or another, they were entitled to notice before they could be bound out, and as they had no notice and were not present, the binding was void, and therefore they are entitled to their discharge, and to go wheresoever they will.
 

 Prr Curiam. Decree accordingly.