Points decided.

[No. 761.]

# THE STATE OF NEVADA, RESPONDENT, *v.* THOMAS W. RAYMOND, APPELLANT.

INDICTMENT FOR MURDER.—An indictment for murder, drawn in the approved form of the common law, *held* sufficient.

ENTIRE CHARGE OF THE COURT MUST BE CONSIDERED.—The entire charge of the court must be considered, in determining the correctness of any portion of it, and if it clearly appears therefrom that no error prejudicial to defendant has been committed, the judgment will not be disturbed.

DEFINITION OF MALICE.—Where the court gave the general definition of malice, instead of the legal definition: *Held,* that the legal definition is more comprehensive, and that if any error occurred, it was against the state and in favor of the defendant.

CHARGE OF THE COURT—MURDER THE RESULT OF MALICE.—The court after giving the statutory definition of murder and manslaughter, and the general definition of malice, charged the jury as follows: "From the foregoing, then, it will be seen that murder is the result of malice; manslaughter the result of sudden passion, heat of blood, anger, when the defendant is supposed not to be master of his own understanding:" *Held,* not erroneous.

REASONABLE DOUBT.—*Held,* that the charge of the court and instructions given in regard to reasonable doubt were as favorable to the defendant as the law would warrant.

HOMICIDE—NOT JUSTIFIED BY PROVOCATION.—The court charged the jury: "No provocation can justify or excuse homicide, but may reduce the offense to manslaughter. Words or actions, or gestures, however grievous or provoking, unaccompanied by an assault, will not justify or excuse murder; and when a deadly weapon is used, the provocation must be great to make the crime less than murder:" *Held,* correct.

MURDER IN THE FIRST DEGREE.—The court charged the jury as follows: "If the jury believe, from the evidence, that the defendant did, with malice aforethought, willfully, deliberately, and premeditatedly assault the man Mooney, with the intent then and there to kill him, and while so engaged did kill the man Twiggs, then you will find the defendant guilty of murder in the first degree:" *Held,* correct.

MURDER IN THE SECOND DEGREE.—The court said in its charge: "If the jury believe \* \* \* that the defendant did, with malice aforethought, but without willful, deliberate premeditation assault the man Mooney, with the intent then and there to do him great bodily harm, and while so engaged did kill the man Twiggs, you will find the defendant guilty of murder in the second degree:" *Held,* correct.

MANSLAUGHTER.—The instruction in the court's charge that: "If the jury believe that the defendant did, upon a sudden heat of passion caused by a provocation apparently sufficient to make the passion irresistible, assault the man Mooney, and while so engaged did kill the man Twiggs, you will find the defendant guilty of manslaughter:" *Held,* correct.

UNLAWFUL ACT.—The court charged the jury as follows: "If the jury believe from the evidence that the defendant assaulted the man Mooney with a pistol loaded with powder and leaden balls, and while so doing, did fire off the said pistol at or upon said Mooney, then he was in commission of an act which in its consequences naturally tends to destroy human life, and was unlawful, unless you find he was justified or excusable in so doing:" *Held*, that when taken in connection with the other instructions defining murder, justifiable and excusable homicide and self-defense, it is not erroneous.

IDEM.—The court further charged the jury: "If you believe from the evidence that the defendant was engaged in the commission of an unlawful act, which in its consequences naturally tends to destroy the life of a human being, or was in the prosecution of a felonious intent, and while so engaged killed the man Twiggs, you will find the defendant guilty of murder:" *Held*, that when considered with the other portions of the charge, it is not erroneous.

CHALLENGE TO JURORS.—A challenge to the panel of jurors, upon the ground that one juror expressed actual bias against the prisoner, and other jurors expressed themselves in such a manner as to imply bias upon their part, and that the law permitting said jurors to be of the panel is unconstitutional, cannot be considered as an objection to the panel of jurors.

CHALLENGE FOR IMPLIED BIAS MUST STATE THE GROUND OF CHALLENGE.—When the defendent challenges a juror for implied bias, he must specify the particular grounds upon which he bases his challenge.

QUALIFIED OPINION OR BELIEF.—A juror who has formed and expressed an opinion that was not unqualified, is not a disqualified juror, especially when he declares that he did not entertain any deliberate or fixed opinion or belief as to the guilt or innocence of the defendant.

CHALLENGE FOR CAUSE ERRONEOUSLY REFUSED—WHEN NOT PREJUDICIAL ERROR.—If a juror is challenged for cause, that challenge is overruled, and he is then challenged peremptorily, there does not necessarily arise any inference that the challenging party is thereby injured. An injury could only arise in case the challenging party was compelled to exhaust all his peremptory challenges, and afterwards have an objectionable juror placed on the panel for the want of another challenge.

VERDICT CONTRARY TO EVIDENCE.—This court will not reverse a judgment in a criminal case on the ground that the verdict is contrary to the evidence, when there is any evidence to support it.

APPEAL from the District Court of the Second Judicial District, Washoe County.

The defendant was indicted for the murder of Frederick Twiggs, tried and found guilty of murder in the second degree, and sentenced to ten years' imprisonment at hard labor in the state prison.

The indictment, after the proper caption, reads as follows:

"The jurors of the grand jury of the county of Washoe, in and for the state of Nevada, impaneled, sworn and charged to inquire of offenses committed within the county of Washoe,  *  *   on their oaths aforesaid do present and find: That one Thomas Raymond, late of the fair grounds near the town of Reno,  * * *   on the twenty-third day of August, in the year of our Lord one thousand eight hundred and seventy-five, and before the finding of this indictment, with force and arms at the fair grounds near the town of Reno, in the county of Washoe, state of Nevada aforesaid, in and upon one Frederick Twiggs, feloniously, willfully and of his malice aforethought, did make an assault; and that the said Thomas Raymond a certain pistol, then and there charged with gunpowder and one leaden bullet, then and there feloniously, willfully and of his malice aforethought, did discharge and shoot off to, against and upon the said Frederick Twiggs; and that the said Thomas Raymond, with the leaden bullet aforesaid, out of the pistol aforesaid, then and there, by the force of the gunpowder aforesaid, by the said Thomas Raymond discharged and shot off as aforesaid, then and there feloniously, willfully and of his malice aforethought, did strike, penetrate and wound the said Frederick Twiggs, in and upon the right eye of the said Frederick Twiggs, giving to the said Frederick Twiggs, then and there, with the leaden bullet aforesaid, so as aforesaid, discharged and shot out of the pistol as aforesaid by the said Thomas Raymond in and upon the right eye of the said Frederick Twiggs, one mortal wound of the depth of six inches and of the breadth of half an inch, of which said mortal wound the said Frederick Twiggs then and there instantly died. And so the jurors aforesaid, upon their oaths aforesaid, do say that the said Thomas Raymond the said Frederick Twiggs, in the manner and by the means aforesaid, feloniously, willfully and of his malice aforethought, did kill and murder, contrary to the statute, ****."

This indictment was "presented in open court by the foreman of the grand jury in presence of the grand jury," and

properly indorsed and filed on the ninth day of September, A. D. 1875.

The defendant by his attorneys moved the court to set it aside upon the grounds: "First. That it does not appear from the indictment that the same was found by the grand jury of the second judicial district in which this court is held. Second. For the causes set forth in the demurrer herewith filed."

The demurrer interposed to the indictment set forth the following grounds: "First. That the grand jury, by which it was found, had no legal authority to inquire into the offense charged by reason of its not being within the local jurisdiction of this court. Second. That it does not substantially conform to the requirements of sections 234 and 235 of the criminal practice act: in this, that it does not state the offense charged in ordinary and concise language, and in such a manner as to enable a person of common understanding to know what is intended. Third. That the facts stated in the indictment do not constitute a public offense."

It appears from the testimony that the defendant Raymond and a man by the name of Mooney engaged in a quarrel at the stables on the fair grounds near Reno, and commenced shooting at each other. After the firing was over, it was discovered that one Frederick Twiggs, a stranger to the defendant, had been killed. The deceased was found dead in one of the stalls in the rear of where Mooney stood during the shooting. The testimony tended strongly to show that Twiggs was killed by one of the pistol-shots fired by the defendant Raymond at Mooney. The testimony also tended to show that the defendant was the transgressor, and commenced the quarrel with Mooney.

The instructions objected to by defendant's counsel and referred to in the opinion, appear in the head-notes.

The other facts are sufficiently stated in the opinion.

The appeal is from the judgment and from the order of the court refusing to grant the defendant a new trial.

*Wm. M. Boardman and S. A. Mann,* for Appellant.

I. The court erred in overruling the motion to set aside the indictment, and in overruling the demurrer to the indictment.

II. The court erred in overruling defendant's objection to the testimony of R. K. Allen, and allowing it to go to the jury, and be considered by them as evidence in rebuttal.

III. The court erred in overruling the defendant's challenge to the jurors McClintock, Peers, Fredericks, Francisco and Wilson. The examination of the jurors show that they had formed or expressed an unqualified opinion, and such an opinion as to render them incompetent to serve as jurors. The court also erred in overruling defendant's objection to the panel of the jury.

IV. The court erred in the instruction given to the jury, that "no provocation can justify or excuse homicide, but may reduce the offense to manslaughter," etc. If this instruction is correct, it would take away the right of self-defense in most instances until it became too late. (*State* v. *Newton,* 4 Nev. 410; *People* v. *Pond,* 8 Mich. 150; *People* v. *Taylor,* 36 Cal. 255; *Commonwealth* v. *Selfridge*; *People* v. *Butler,* 8 Cal. 441.) It assumes that an offense has been committed, and that the deceased was wrongfully killed. (*People* v. *Williams,* 17 Cal. 147; *People* v. *Gibson,* 17 Cal. 285; *People* v. *Ybarra,* 17 Cal. 171.)

V. The court misdirected the jury as to the legal definition of malice. (*People* v. *Taylor,* 36 Cal. 255; 34 Cal. 48.)

VI. The court erred in instructing the jury: "From the foregoing it will be seen that murder is the result of malice," etc. This instruction is calculated to mislead the jury. The inference to be drawn from it is, that if the defendant had malice, he must therefore be guilty of murder.

VII. The court erred in instructing the jury upon reasonable doubts, that "such doubt should not be merely captious, but such as is entirely consistent with the theory of the defendant's innocence." (1 Greenl. Ev., sec. 29; *People* v. *Padilla,* 42 Cal. 535; *People* v. *Campbell,* 30 Cal. 315; Wills on Circum. Evid. 171–175; 41 Cal. 66.)

VIII. The court erred in its charge to the jury as to the crime of murder in the first degree.  The instruction leaves out the doctrine of the law in respect to the right of self-defense.  All the elements and conditions mentioned in the instructions might have existed and yet the defendant not have been guilty of murder in the *first degree.*   (*People* v. *Campbell*, 30 Cal. 315.)

IX. The court erred in defining murder and manslaughter, and in giving a definition to the term "unlawful act." In these instructions the court assigns a conclusive effect to the circumstances, and assumes that they are proved. (*People* v. *Lewis*, 16 Cal. 99; *People* v. *Dick*, 32 Cal. 213.)

X. The verdict is against the law and the evidence. (*People* v. *Taylor*, 36 Cal. 258; 2 Whar. 993, 1019, 1023; 1 Bish. Cr. Law, sec. 849.)

*J. R. Kittrell, Attorney-General,* for Respondent.

I. The indictment is sufficient.   (*People* v. *Lloyd*, 9 Cal. 54; *People* v. *Dolan*, 9 Cal. 576; *People* v. *Rodriguez*, 10 Cal. 50; *People* v. *Thompson*, 4 Cal. 238; *People* v. *White*, 34 Cal. 183; 1 Comp. L., secs. 236, 243, 244.)

II. The testimony of R. K. Allen is in strict rebuttal of the testimony given by the appellant in his own behalf on the trial. Even if it were not, I apprehend that it is within the discretion of the court to permit a witness to be recalled at any stage of the trial to explain his testimony previously given, or to enlarge the same.

III. The challenge made to the jurors McClintock, Peers, Fredericks, Francisco and Wilson, as a challenge to the panel was improperly made.  (1 C. L., secs. 322, 324; *State* v. *Millain*, 3 Nev. 409.)

IV. A challenge for implied bias must state some one of the causes enumerated in the statute.  (*People* v. *McGungil*, 41 Cal. 430; *People* v. *Hardin*, 37 Cal. 258; *People* v. *Dick*, 37 Cal. 379.)

V. The instructions of the court state the law, and are upheld and supported by a host of well-considered cases. (2 Whart. C. L., sec. 970, and cases cited; 2 Whart. C. L., secs. 965, 997–99.)

By the Court, HAWLEY, C. J.:

1. The indictment in this case is for murder and is drawn in the approved form of the common law. The motion to set it aside and the demurrer thereto were properly overruled. The objections made are frivolous.

2. We think the testimony of the witness Allen was properly admitted in rebuttal of the testimony of the defendant.

3. The several objections to the court's charge are not well taken. It is well settled that the entire charge of the court must be considered, and if it clearly appears therefrom that no error prejudicial to defendant has been committed, the appellate court will not disturb the judgment. The specific objections urged by counsel are not deserving of any extended review. The charge upon the question of provocation is fully sustained by the authorities. (Wharton's Am. Cr. L., secs. 970–1.)

The court, in instructing the jury as to what constituted malice, gave the general instead of the legal definition of the word. If we admit that the legal definition has a different meaning from the general definition given by Webster and used by the court, it is apparent that the legal definition is more comprehensive, and if any error occurred it was against the state and in favor of the defendant. (*State* v. *Stewart*, 9 Nev. 131; *Commonwealth* v. *York*, 9 Met. 104.)

The phrase, "from the foregoing it will be seen that murder is the result of malice," when taken in the connection where it appears, is not erroneous. The court had clearly and correctly defined the degrees of murder and had properly instructed the jury as to the law of self-defense, and there is not even a bare possibility that the jury could have been misled upon the question as to what facts were necessary to constitute the crime of murder.

The same may be said of the clause objected to in regard to reasonable doubt. "Such doubt, moreover, should not be merely captious, *but such as is entirely consistent with the theory of the defendant's innocence.*" Every doubt which a

juror entertains of defendant's guilt must, in a legal sense, be consistent with the theory of defendant's innocence, and it is difficult to determine what particular qualification of the term "reasonable doubt" was intended to be given by the insertion of the words we have italicized. But in no sense could the jury have been misled to the prejudice of the defendant. Immediately preceding the clause in question, the court charged the jury, that "the defendant is presumed in law to be innocent until the contrary is proven, and in case of a reasonable doubt existing in your mind, whether his guilt be satisfactorily shown, he is entitled to be acquitted." Immediately after, the court adds: "You must be convinced of the guilt of the defendant before you convict him." Again, at the request of defendant's counsel, the court gave this instruction: "The jury must be entirely satisfied of the guilt of the defendant, or they must acquit him."

The charge and instruction upon this point were certainly as favorable to the defendant as the law would warrant. (*State* v. *Ferguson*, 9 Nev. 118; *Commonwealth* v. *Webster*, 5 Cush. 320; *State* v. *Ostrander*, 18 Iowa, 458.)

The other portions of the charge objected to, when considered with the portions not objected to, clearly and correctly stated the law applicable to the particular facts of this case. (Wharton's Am. Cr. L., secs. 965–7; 1 Bish. Cr. L., sec. 412; 1 Russ on Crimes, 539–40; Wharton's Law of Homicide, 42–3.)

4. After examining the jurors McClintock, Peers, Fredericks, Francisco, and Wilson, as to their actual state of feeling toward the defendant, and as to all matters from which a bias against the defendant might be inferred, the defendant by his counsel interposed "a challenge to the panel herein upon the ground that the juror McClintock expressed actual bias against the prisoner, and also the jurors Peers, Fredericks, Francisco, and Wilson, expressed themselves in such a manner toward the prisoner as to imply bias upon their part, and that the law permitting said jurors to be of the panel is unconstitutional." It is evident that this cannot be considered as an objection to the panel of jurors. The

statute provides, that "a challenge to the panel can only be founded on a material departure from the forms prescribed, by statute in respect to the *drawing* and *return* of the jury, or on the intentional omission of the sheriff to summon one or more of the jurors drawn." (1 Comp. L. 1947.)

There is no pretense that the objection to the panel is made upon either of the grounds specified in the statute, nor does it appear that the challenge was in writing specifying plainly and distinctly the facts constituting the grounds of challenge, as required by section 324 of the criminal practice act. (1 Comp. L. 1948.)

A challenge to the panel is not allowed for any of the grounds set forth by counsel, and hence as a challenge to the panel it was properly overruled. A strict construction of the language used would result in the conclusion that the only challenge interposed by counsel was a challenge to the panel. But if it was also intended as a challenge to the individual jurors therein named, then the challenge for implied bias is subject to the further objection made by the attorney-general, that it does not specify any ground of challenge for implied bias as provided by section 340 of the criminal practice act. (1 Comp. L. 1964.) As the jury law of 1875, under which the court acted in impaneling the jury, was unconstitutional, although at the time of the trial of the case it had not been so declared by this court, the proceedings should have been conducted under the law as it existed prior to the passage of the act of 1875. (*State* v. *McClear*, *ante*, p. 39.) In order, therefore, to have properly presented this question, counsel should have pursued the course adopted in *The State* v. *McClear*, and challenged the jurors for "having formed or expressed an unqualified opinion or belief that the prisoner was guilty or not guilty of the offense charged," if that was the ground of challenge upon which they relied.

Section 342 of the criminal practice act expressly provides that: "In a challenge for an implied bias, one or more of the causes stated in section 340 must be alleged." (1 Comp. L. 1966.) The statute points out nine distinct causes of challenge for implied bias, and it has been decided

in this state that the defendant must specify one or more of the particular grounds upon which he bases his challenge. (*State* v. *Squaires*, 2 Nev. 230.) The same rule prevails in civil cases. (*Estes* v. *Richardson*, 6 Nev. 128.) And such has been the uniform current of decisions in California under a statute identical with our own. (*People* v. *Reynolds*, 16 Cal. 130; *People* v. *Hardin*, 37 Cal. 259; *People* v. *Dick*, 37 Cal. 279; *People* v. *Renfrow*, 41 Cal. 38; *People* v. *McGungill*, 41 Cal. 429.)

But, owing to the peculiar wording of the challenge, and it being evident from the record before us that the court below considered· the challenge as having been properly made, and based its decision upon the constitutionality of · the act of 1875, we have concluded to waive this preliminary objection, and examine the question upon its merits.

The juror Peers, in his examination, certainly evinced a strong desire to be excused from serving as a juror. He had formed an opinion and expressed it; but it was not an unqualified opinion. His information was derived from "bar-room talk," and he did not know whether any of the persons with whom he conversed about the case were witnesses or not. He was not acquainted with the defendant. He did not entertain any deliberate or fixed opinion or belief as to the guilt or innocence of the defendant. Upon the principles announced by us in *The State* v. *McClear*, it is clear that the court did not err in overruling the challenge to this juror.

Admitting that the court erred in not appointing triers to try the challenge of actual bias to the juror McClintock, and also erred in overruling the challenge of implied bias to the jurors Wilson, Francisco and Fredericks, what is the result?

The record shows that two of the objectionable jurors, McClintock and Wilson, were peremptorily challenged by the state. As to 'them it is apparent that the defendant suffered no injury by the erroneous ruling of the court. The jurors Francisco and Frederick were peremptorily challenged by the defendant. Under the law of 1861, as amended in 1865, the defendant was entitled to ten peremp-

tory challenges. (1 Comp. L. 1960.) The court allowed the defendant to exercise twelve peremptory challenges, two more than the law allowed. By this error in his favor the defendant was enabled to get rid of the objectionable jurors and still had the ten peremptory challenges to which he was entitled. He was not required to exhaust any of his peremptory challenges against either of the jurors that were disqualified by law. No substantial right was taken away or impaired. The defendant was not deprived of any of the privileges guaranteed by the common law and secured by the constitution of this state. He had a fair and impartial jury, and this we decided in *The State* v. *McClear* was the ultimate object to be secured by the constitutional right to challenge a juror for principal cause and to the favor. Is it not, then, perfectly apparent that no injury occurred to defendant by the erroneous ruling of the court?

In *Fleeson* v. *The Savage Silver Mining Company*, the supreme court of this state said that "the rules governing the impaneling of juries, the introduction of evidence and the general conduct of trials, are but the means by which such right is to be obtained," and that if it appeared "that a departure from them did not defeat or affect the ultimate object of the trial, it would be a mockery of justice to set aside a judgment, otherwise proper and regular, because of such departure." And it was there decided that if a juror is challenged for cause, that challenge is overruled, and he is then challenged peremptorily, there does not necessarily arise any inference that the challenging party is thereby injured; that an injury could only arise in case the challenging party was compelled to exhaust all his peremptory challenges, and afterwards have an objectionable juror placed on the panel for the want of another challenge. This general principle, to which we adhere, has been frequently decided in both civil and criminal cases. (3 Nev. 163, and authorities there cited; *People* v. *Gaunt*, 23 Cal. 156; *People* v. *Weil*, 40 Cal. 268; *People* v. *McGungill*, 41 Cal. 429; *State* v. *Cockman*, 61 N. C. 95.)

5. It is certainly too well settled by the decisions in this state to require any discussion upon the point that this

court will not reverse a judgment in a criminal case on the ground that the verdict is contrary to the evidence where there is any evidence to support it. (*State* v. *McGinnis*, 6 Nev. 111; *State* v. *Ah Tom*, 8 Nev. 214; *State* v. *Glovery*, 10 Nev. 24.)

In this case there was some evidence to sustain the verdict.

The judgment of the district court is affirmed.