## R. MEAD SHUMWAY V. STATE OF NEBRASKA.*

FILED JULY 17, 1908.   No. 15,605.

1. **Criminal Law:** CONTINUANCE. Where the adverse party admits that the witnesses, if present, would testify as stated in an affidavit for a continuance, and the party presenting such affidavit afterwards reads the statement contained therein as evidence to the jury, there is presented no ground for a reversal of the final judgment of the trial court because of its refusal to grant the continuance asked.

2. ———: ———. Only that part of the affidavit for a continuance which sets forth the evidence of the absent witnesses should be read to the jury, and it is proper for the court to exclude the other matters contained therein.

3. ———: SELECTING JURY. Rulings of the district court in overruling challenges for cause are not prejudicial to the defendant, unless it is shown that he was compelled to accept one or more objectionable jurors for want of peremptory challenge.

4. ———: ———. The true object of challenges, peremptory and for cause, is to enable the parties to avoid disqualified persons and secure an impartial jury, and, when it appears that this end is accomplished, there can be no just ground of complaint against the ruling of the court as to the competency of the jurors.

5. ———: INSTRUCTIONS. An instruction tendered by a party may be properly refused, if the proposition contained therein has been fully covered by the instructions given on the court's own motion.

6. ———: ———. It is proper for the trial judge, in instructing the jury in a criminal case, to quote so much of the statutes as is necessary to define the crime charged against the defendant, and ordinarily it is not prejudicial error to include in the quotation the punishment provided therefor.

7. ———: ———. It is not necessary for the trial court to cover all of the elements of the crime charged against the defendant in a criminal prosecution by a single paragraph of the instructions. It is sufficient if the instructions as a whole cover all of the elements of the offense and correctly state the law to be applied thereto.

8. ———: ———. An instruction treating the evidence as both direct and circumstantial *held*, in this case, to correctly reflect the state of the record.

* Rehearing denied. See opinion, p. 165, *post.*

9. ———: ———. The following instruction: "And you are further instructed that, if you believe, after considering all the evidence in the case, that any witness or witnesses have wilfully and knowingly testified falsely to any fact material to the issue in this case, you have the right to entirely disregard the testimony of such witness or witnesses"—is not vulnerable to the objection that its language is especially directed against the defendant, who was a witness in his own behalf.

10. ———: ———. It is not error to instruct the jury, in substance, that, if, after a careful comparison and candid consideration of all the evidence in the case, they have a doubt of the defendant's guilt, it will then be their duty to determine whether such doubt is reasonable and sufficient in law to acquit him, and, if they find the doubt in question is not a reasonable one, it will not be sufficient to acquit the defendant.

11. Homicide: EVIDENCE. On the trial of one charged with murder in the perpetration of a robbery, the state may be permitted to introduce evidence to show that the person murdered and her husband were in possession of a certain sum of money which they put away in the home for safe-keeping shortly before the commission of the crime, and that such money was missing when the criminal act was discovered, notwithstanding the defendant was not present when the money was put in the supposed place of safety.

12. Criminal Law: EVIDENCE: HARMLESS ERROR. The admission of incompetent evidence does not always require the reversal of the judgment of the trial court, and, where it clearly appears that the evidence complained of is so immaterial that its reception could not have influenced the jury in arriving at their verdict, its admission is error without prejudice.

13. ———: ———. In a criminal prosecution, evidence of the defendant's flight from the scene of the tragedy, his arrest and escape to an adjoining state, where he obtained employment distant from any railroad or highway, and in a place where he was likely to escape detection and avoid arrest, may be introduced by the state as tending, when considered with all of the other evidence in the case, to establish his guilt.

ERROR to the district court for Gage county: WILLIAM H. KELLIGAR, JUDGE. *Affirmed.*

*Fulton Jack* and *R. W. Sabin,* for plaintiff in error.

*William T. Thompson, Attorney General, Grant G.*

*Martin, M. W. Terry, Fred O. McGirr* and *Samuel Rinaker,* contra.

BARNES, C. J.

R. Mead Shumway, who, for convenience, will hereafter be called the defendant, was tried in the district court for Gage county on an information containing two counts. The first count charged him with the crime of murder in the first degree for the killing of one Sarah Martin with deliberate and premeditated malice, and by the second count he was charged with murder in the same degree for killing the said Sarah Martin in the perpetration of a robbery. His trial resulted in a verdict of guilty as charged in the second count of the information, and the jury imposed upon him the death penalty. From a judgment and sentence upon the verdict, he has brought the case here for review.

Defendant's first contention is that the district court erred in overruling his motion for a continuance. It appears that he was informed against on the 31st day of October, 1907, and on the 4th day of November following he pleaded not guilty to the charges contained in the information. At that time he asked for and obtained a continuance until the 18th day of that month, in order to procure the depositions of Frank Johnson and John Gilbert, at Lewiston, in the state of Idaho, who, he alleged in his affidavit for a continuance, if he had an opportunity to take their depositions, would testify that prior to his leaving Idaho in the month of August, 1907, he had earned and received in the neighborhood of $200. It further appears that on the 18th day of November, when the case came on for trial, the depositions of the witnesses above named had not been taken, for the reason that defendant's counsel had been unable to find them, and thereupon a motion for a second continuance was filed, based on the original and additional affidavits of defendant and his attorneys, showing their inability to locate the witnesses and

secure their depositions. Strictly construed, it is somewhat doubtful if the showing was sufficient to require the court to grant a continuance. But to obviate any question of that kind, and avoid any necessity therefor, the state admitted that the witnesses, if present, would testify as stated in the defendant's affidavits, and afterwards so much of said affidavits as were material were admitted in evidence. The court overruled the motion, and this ruling is assigned as error. In *Catron v. State*, 52 Neb. 389, it was said: "Where the adverse party admits that witnesses, if present, would testify as stated in an affidavit for a continuance, and the party presenting such affidavit afterwards reads such statement in his affidavit as evidence to the jury, there is presented no ground for a reversal of the final judgment of the trial court because of its refusal to grant the continuance asked." The same question was again before this court in *Foster v. State*, 79 Neb. 259. There the defendant made an application for a continuance, setting forth fully what he believed the absent witnesses would swear to, if present. The state offered to admit that the witnesses, if present, would testify as stated in the affidavit. Under the circumstances of the case it was held that there was no abuse of discretion on the part of the court in overruling the motion for a continuance. Indeed, this rule is so well settled, not only in this court, but in other jurisdictions, that it is unnecessary to cite authorities in support of it.

It is contended, however, that the court erred in excluding certain parts of the affidavits, to wit, the statements showing the efforts of counsel to ascertain the whereabouts of the witnesses and procure their depositions, and that the defendant, after his arrest, was confined in the penitentiary for safe-keeping, and was thereby to some extent deprived of free opportunity to consult with his counsel and prepare for trial. That those matters were properly excluded there can be no doubt. The testimony of the absent witnesses, which was sought to be secured, was the only material part of the affidavits.

The efforts of counsel to obtain the depositions and the alleged insufficient opportunity afforded the defendant for consultation with counsel could throw no light upon the question of his guilt or innocence. They were matters with which the jury had no concern, and were therefore properly excluded.

Defendant's second assignment of error, the one upon which he appears to place the greatest reliance, is that the court erred in overruling his challenge for cause to certain persons called as jurors, and our attention is directed to the *voir dire* examination of John Clark, James Coon, W. B. Pittman, W. P. Carrithers, O. L. Beesom, Sanford Ritter and John Busboom. It appears from the record that Busboom was a qualified person to serve as a juror, so he may be dismissed from further consideration. As we read the record, five of the persons above named may have been to some extent objectionable. It may be conceded that the district court ought to have excluded them on the defendant's challenge for cause, and, if it were at all probable that the defendant's rights were prejudiced thereby, we would grant him a new trial, as a matter of course; but it appears that the defendant exercised his first peremptory challenge on juror Pittman, his second on Beesom, his third on Clark, his eleventh on Carrithers, and his twelfth on Coon, and the remainder of his 16 peremptory challenges were exercised upon persons who, so far as the record shows, were legally competent jurors and were not challenged for cause. Again, it affirmatively appears that no person served on the jury that tried the defendant who was challenged for cause by either party, and the *voir dire* examination of eight of the jurors is not contained in the record at all. It also appears that the juror, who was selected after the defendant had exhausted his last peremptory challenge, was accepted by him without objection. So we may say, without fear of successful contradiction, that not only has the defendant failed to show any prejudicial error in the court's refusal to sustain his challenges to the per-

sons above named, but it is affirmatively shown that he was tried by an entirely fair and impartial jury.

We come now to apply the law to the facts above stated. We find, from an examination of the authorities, that in a few jurisdictions it is held that the error is material if the challenge for cause is wrongfully overruled, and the juror is afterwards excused on peremptory challenge. There is also another line of authorities which hold that errors in overruling challenges for cause are not material, unless it is affirmatively shown that the defendant exhausted all of his peremptory challenges before the trial jury was secured. A third rule, which we believe to be the most reasonable one, and which is supported by the great weight of modern authority, is that errors in overruling challenges for cause are not prejudicial to the defendant, unless it be affirmatively shown that he was compelled to accept one or more objectionable jurors for want of peremptory challenge. This rule is recognized and approved by Judge Thompson, in his work on Trials, where it is said: "Finally, it is a rule of paramount importance that errors committed in overruling challenges for cause are not grounds of reversal unless it be shown an objectionable juror was forced upon the challenging party after he had *exhausted his peremptory challenges;* if his peremptory challenges remained unexhausted, so that he might have excluded the objectionable juror by that means, he has no ground of complaint." 1 Thompson, Trials, sec. 120. In *Wooten v. State,* 99 Tenn. 189, certain persons were summoned as jurors, and answered on their preliminary examination that they had read newspaper accounts of the homicide, and from those accounts had formed an opinion touching the guilt or innocence of the defendant. By reason of those opinions they were challenged by the defendant for cause; but the court ruled that they were competent, and thereupon the defendant challenged them peremptorily, and they were excused from service. Before the jury was completed, and while eleven jurors were being selected, the defend-

ant exhausted all of his peremptory challenges. Afterwards a juror was called and accepted by the state, and by the defendant, and became the twelfth member of the jury without objection or challenge. The court, basing its opinion on the foregoing facts, made use of the following language: "The true object of challenges, peremptory and for cause, is to enable the parties to avoid disqualified persons and secure an impartial jury. When this end is accomplished, there can be no just ground of complaint against the ruling of the court as to the competency of jurors. In the present case, all of those alleged to be incompetent were rejected upon peremptory challenges, and, therefore, did not participate in the trial; and no objection, peremptory or for cause, was made to any jury selected. Dunning, the only one selected after the defendant had exhausted his peremptory challenges, was 'accepted' by both sides, without objection from either. No one of the jurors actually trying the case appears to have been objectionable or disqualified, consequently, all of them are presumed to have been unobjectionable and qualified." In *Freeman v. People,* 4 Denio (N. Y.), 9, 31, speaking of the defendant's use of his peremptory challenges, the court said: "He was free to use or not use them, as he thought proper; but having resorted to them they must be followed out to all their legitimate consequences. Had he omitted to make peremptory challenges, his exceptions growing out of the various challenges for cause would have been regularly here for revision. But he chose by his own voluntary act to exclude these jurors, and thus virtually and, as I think, effectually blotted out all such errors, if any, as had previously occurred in regard to them." In Texas it has been held in at least five cases that, unless objection is shown to one or more of the jurors who tried the case, the ruling of the trial court upon the competency or incompetency of jurors will not be inquired into, even though the defendant had exhausted his peremptory challenges. *Holt v. State,* 9 Tex. App. 571; *Loggins v.*

*State,* 12 Tex. App. 65, *Blackwell v. State,* 29 Tex. App. 194; *Holland v. State,* 31 Tex. Cr. Rep. 345; *Cotton v. State,* 32 Tex. 614. The fact that the defendants in a criminal. case were obliged to challenge disqualified jurors peremptorily was held, in *Carthaus v. State,* 78 Wis. 560, not to be prejudicial error. In that case it was said: "A fair and impartial jury was impaneled, and what more could the defendant ask for?"_ In *State v. Raymond,* 11 Nev. 98, it was held: "If a juror is challenged for cause, the challenge is overruled, and he is then challenged peremptorily, there does not necessarily arise any inference that the challenging party is thereby injured. An injury could only arise in case the challenging party was compelled to exhaust all his peremptory challenges, and afterwards have an objectionable juror placed on the panel for the want of another challenge." See, also, *Johns v. State,* 55 Md. 350; *Spies v. People,* 122 Ill. 1. In *Northern P. R. Co. v. Herbert,* 116 U. S. 642; the supreme court of the United States held: The right to challenge is the right to reject, not to select a juror. If from those who remain an impartial jury is obtained, the constitutional right of the accused is maintained. In that case, as in the case at bar, it is not even suggested that the jury by which the defendant was tried was not a competent and impartial one. It was said in *Bohanan v. State,* 15 Neb. 209: "Although there may be error in overruling a challenge to a juror for cause, yet, if the prisoner be not compelled to exhaust his peremptory challenges to exclude him from the panel, it is error without prejudice." And in *Blenkiron v. State,* 40 Neb. 11, where the trial court overruled defendant's challenge to a juror for cause, and the record was silent as to the manner in which the juror was dismissed, and did not show that the defendant was compelled to exhaust his peremptory challenges to exclude him from the jury, and did disclose that the party challenged was not one of the jurors who tried the case, it was held that, so far as indicated by the record, there was no prejudicial error in overruling the challenge to the juror.

Finally, we have repeatedly held that error cannot be predicated upon the overruling of a challenge for cause, when the record does not disclose that the defendant has exhausted all of his peremptory challenges. In this case, as above stated, the record shows that the defendant exercised all of his peremptory challenges; but it does not show that they were all exercised upon persons whom he contends were disqualified to serve as jurors, and he has failed to show affirmatively that he was prejudiced by the rulings complained of. No showing of any kind whatever was made which would even remotely indicate that the defendant was in anywise prejudiced by the action of the trial court in overruling his challenges for cause. In order to render errors in overruling such challenges prejudicial to the defendant, it must be affirmatively shown that he was compelled to accept one or more objectionable jurors whom he would not otherwise have been compelled to allow to remain upon the jury. The constitution of our state requires that the defendant be tried by an impartial jury. The twelve men who tried the defendant in the case at bar, so far as the record shows, were entirely fair and impartial, and no objection was urged as to their qualifications by either party. This was all the defendant was entitled to, and the errors, if any, in overruling his challenges for cause were without prejudice to any of his substantial rights.

Defendant's next contention is that the district court erred in giving and refusing to give certain instructions to the jury. He first complains of the refusal of the court to give the fifth paragraph of the instructions which he tendered. This request related to the presumption of innocence, and, while it was not objectionable in form, yet the court gave defendant's fourth request, which covered the same ground, and also gave an instruction on his own motion, on that subject, which was approved in *Herold v. State,* 21 Neb. 50. The matter was thus correctly disposed of, and the request in question was properly refused.

Shumway v. State.

Defendant also assigns error for the court's failure to give his fourteenth, fifteenth, and sixteenth requests. His fourteenth instruction, among other things, contained the following: "The evidence in behalf of the state is all circumstantial, and under these circumstances if any part of the evidence is such as to indicate that the clothing or any part of it, claimed by the state to have blood stains upon it, is not the property of the defendant, or even to cause you to have a reasonable doubt as to whether it is the property of the defendant, or if it is of a different kind than that claimed by the state to have been owned by him to such an extent as to cause you to have a reasonable doubt of his guilt, it is your duty to acquit him." There was no error in refusing this instruction. It is true that, in cases depending upon circumstantial evidence, each necessary link in the chain of circumstances must be established to the satisfaction of the jury beyond a reasonable doubt; but it is not every fact which the state seeks to prove that must, of necessity, be so established. It is true that, if the clothing "claimed by the state to have blood stains upon it was not the property of the defendant," the jury might properly have been instructed to eliminate that fact from their consideration, but, if it were his property, and the blood stains were present, it would be a proper subject for them to consider as bearing on the question of his innocence or guilt; but it would scarcely have been proper for the court to tell the jury that it would be their duty to acquit him if they had a reasonable doubt as to the identity of the clothing referred to. The court could not assume that that fact should be decisive of the main question, and thus attach to it an importance to which it might not be entitled. The fifteenth and sixteenth instructions were of the same tenor and effect as the fourteenth, above quoted, except that other articles of clothing were referred to. The whole subject of the identity of the clothing and the force or effect of a finding either way, as bearing upon the question of the

14

guilt or innocence of the defendant, was for the consideration of the jury, and the jury alone. Had they discarded the subject of the clothing and found defendant guilty upon the other evidence adduced, we cannot see that the verdict would have been rendered any the less conclusive.

The tenth instruction, given by the court on his own motion, is criticised because it contains a part of the statute which defines the crime of robbery and provides a punishment therefor. The criticism is not well founded. It is proper for a trial judge in instructing the jury to quote so much of the statute as is necessary to define the crime charged against a defendant, and the fact that robbery is punishable by imprisonment in the penitentiary is one of such common knowledge that its recital in an instruction can in nowise prejudice the defendant or deprive him of any constitutional right.

It is contended that the eleventh instruction, given by the court on his own motion, is erroneous, because it does not contain all of the elements of the second count of the information upon which the defendant was convicted, and did not refer to the venue, to the weapons used, or state that the killing must be done purposely. An examination of the instructions discloses that no attempt was made to cover all of the elements of the crime charged against the defendant by the instruction criticised, and we find it stated in the second paragraph of the first instruction that the defendant was charged in the second count of the information with purposely murdering Sarah Martin as alleged in the first count on the 3d of September, 1907, in Gage county, Nebraska, by the use of a knife and wrench; that the counts of the information and the plea of not guilty thereto formed the issues which were submitted to the jury for their determination. It is an elementary proposition that all of the instructions should be considered together, and we find in this case that the charge, when so considered, fully and fairly covers all of the elements of the crime set forth in both counts of the infor-

mation upon which the defendant was tried. His contention, therefore, is not well founded.

Instruction number 13 is assailed because it contains the following words: "Or if such facts and circumstances, together with the direct evidence in this case, do not satisfy you"—and it is insisted that the words "direct evidence" should not have been used, for the reason that all of the evidence was circumstantial. We think the court was justified in giving this instruction. It appears that certain facts in connection with the murder were proved by direct evidence, such as the defendant's conduct, his flight, his arrest in Kansas, and his escape and flight to the state of Missouri. The language complained of was therefore properly used.

Counsel assert that instructions 17 and 18, given by the court on his own motion, were prejudicial to the defendant, because the jury were thereby told that they had a right to disregard the testimony of any witness if they believed he had knowingly testified falsely. It is insisted that the language thus criticised was directed against the defendant. This contention is not sustained by the record. The instruction was the usual one given in such cases, and related to all of the witnesses. It was one which has long received the sanction of this court.

Instruction numbered 20 given by the court on his own motion, is complained of, because it told the jury that a doubt, to justify an acquittal, must be a reasonable doubt, and they must determine, if they had any doubt whatever, that such doubt was a reasonable one, in order to authorize an acquittal. The substance of this instruction was approved in *Barney v. State,* 49 Neb. 515, *Polin v. State,* 14 Neb. 540, *Foley v. State,* 42 Neb. 233, and *Maxfield v. State,* 54 Neb. 45, and we are satisfied, after an examination of all of the instructions given and those refused, that the jury were properly instructed upon the law of the case.

Finally, it is claimed that the court erred in the admission of certain evidence over the defendant's objections.

Under this assignment, it is first contended that the evidence of Mr. Martin, describing the disposition which he and his wife made of certain money on the day preceding the murder, should have been excluded. It is urged that this evidence was incompetent, because the defendant was not present at that time. Conceding this to be true, the state certainly had the right to show that Martin and his wife had the money in question at their home and put it away, in what they considered to be a place of safety. This is especially true, because the charge contained in the second count of the information was one of murder while perpetrating a robbery. Evidence that the deceased had the money in her house at the time the murder was committed, and that it was missing when the act was discovered, was clearly competent to sustain the charge upon which the defendant was convicted.

Counsel also objected to Martin's statement of the amount of money which he and his wife brought with them when they came to Gage county. It is probable that this objection should have been sustained, but we fail to see in what way the reception of this evidence was prejudicial to the defendant. It was not the purpose of the prosecution to show any connection between the money referred to by that question and the money alleged to have been taken by the defendant. The purpose was to show that the defendant knew Martin had considerable money in the house, that he ascertained that fact when Martin let him have $5 on Saturday before the crime was committed, that Martin had turned this money over to his wife, and that she had such an interest therein as would sustain the charge of ownership contained in the information.

Complaint is made of the admission of the evidence of the persons who arrested Shumway at Seneca, Kansas. And the statement particularly challenged was that they had made an effort to find the defendant the next day after he had escaped from their custody. Evidence of his

flight, his arrest, and of his escape was certainly competent, and the objection thereto was properly overruled.

Complaint is further made because the court overruled defendant's objection to the evidence of one Charles Markt, of Holt county, Missouri, who had known him six or seven years, and to whose place he went soon after the crime in question was committed. By this evidence the state sought to show the fact that Oregon, the town in Missouri near where the defendant was arrested, was an inland town, several miles distant from any railroad, and that the location of the farm where he was found was not upon the public highway. These questions were certainly proper and competent, for the purpose of showing that the defendant, after his flight from the scene of the tragedy, had selected an isolated place in which to immure himself, and one where he was likely to avoid arrest.

In conclusion, we desire to say that, owing to the great importance of the case, and the fact that the jury have imposed upon the defendant the death penalty, we have carefully read all of the evidence and reviewed the whole record, and to us it seems that the jury made no mistake in their verdict. The evidence is of a most convincing character. It appears that the defendant had a fair trial, by an impartial jury, and the record fails to show any reversible error.

The judgment of the district court is in all things affirmed, and it is ordered that Friday, the 30th day of October, A. D. 1908, be, and the same is, hereby fixed and appointed as the date for carrying into execution the judgment and sentence of the district court.

AFFIRMED.

The following opinion on motion for rehearing was filed January 23, 1909. *Rehearing denied. Former opinion modified:*

1. Appeal: RECORD. A paper, not properly a part of the record of the case, nor made so by statute, does not become a part of the record by being attached to or made a part of the transcript.

2. **Exceptions, Bill of:** REVIEW. In order to review the proceedings of the district court upon the impaneling of a jury, all matters with respect thereto which it is desired to present to the supreme court should be preserved by bill of exceptions.

3. **Syllabus Vacated.** The portion of the former opinion and syllabus in this case which treats of the errors assigned with reference to the impaneling of the jury vacated and set aside.

LETTON, J.

A motion for rehearing has been filed in this case supported by two printed briefs, and an exhaustive oral argument has been made. The principal complaint is that the court erred in its conclusion upon the question whether there was prejudicial error in the overruling of certain challenges for cause made by the defendant upon the *voir dire* examination of certain jurors. This has required a reexamination of the record with respect to the proceedings upon the impaneling of the jury. The bill of exceptions contains the *voir dire* examination of 49 persons. It further shows that 13 of these were excused upon the court's own motion, they being clearly disqualified; that 11 jurors were excused for cause upon the challenge of the state, and that 6 were excused upon the defendant's challenge for cause. The bill of exceptions further shows that 12 jurors, none of whom were challenged for cause, sat upon the trial, leaving 7 jurors unaccounted for. The bill of exceptions does not disclose whether these jurors or any of them were challenged peremptorily by either the state or the defendant, and, hence, fails to show that the defendant exhausted his peremptory challenges in order to oust the jurors whom he claims were erroneously retained. The transcript of the record, so far as it relates to the impaneling of the jury, shows that the impaneling began upon the 18th day of November, 1907, at 1:30 o'clock P. M.; that the impaneling continued during the remainder of that day and during the 19th, and was completed on the 20th; that upon the 21st day of November the jurors were duly impaneled and sworn, the state be-

gan the offer of its evidence, and at 6 o'clock P. M. an adjournment was taken until the next morning. Following these entries, the record recites that on the 21st of November there was filed in the office of the clerk of the district court the "jury list." This paper contains a list of names of 75 persons arranged in vertical column. Opposite the names of many of these persons are the words "Challenged for cause"; but there is nothing to show by whom these persons were challenged, for what reason they were challenged, or what disposition was made of the challenge. Opposite the names of others is the abbreviation "Deft." or the word "State" followed by a number, for example: "Deft. 4, Deft. 9," and so on; but there is nothing but inference from marks to show that these persons were challenged for cause or peremptorily or were excused or discharged from the panel. The paper is entirely typewritten, and is evidently not an original, but a copy, though certified to be the original list. In this condition of the record, the questions attempted to be raised upon the motion for rehearing as to error in sustaining challenges for cause cannot be considered, since there is no proof of the facts upon which the argument is predicated. A paper not made a part of the record by statute must be embodied in the bill of exceptions and made a part of the record by the trial court under its certificate; otherwise its insertion in the transcript is unauthorized and of no effect, and it is no evidence of the proceedings taken in the lower court. The clerk's certificate could not make this paper a part of the record. *Jordan & Miller v. Quick,* 11 Ia. 9; *State v. Jones,* 11 Ia. 11. This rule is founded on sound reason, for it would be grossly unfair to a trial judge if a recital of the proceedings taken and a history of his rulings made during the trial should be made a part of the record to be considered by a reviewing court, without allowing him the opportunity to determine the truth or falsity of such recitals before it became crystallized into the record. This is the very reason for the law as to presentation and allowance of bills of excep-

tions. To hold otherwise would, in all probability, give rise to unnumbered evils, and the only safe rule is to adhere to that course which both law and reason dictate.

A long time after the submission of the case, and four months after the opinion was handed down, the plaintiff in error filed a motion for leave to withdraw the bill of exceptions for the purpose of applying to the trial judge for leave to make the paper referred to a part of the bill of exceptions. We are inclined to think that the power of the district judge to allow an amendment to the bill of exceptions expired with the time allowed by statute in which to allow and settle the bill, but, if he still has the power to allow an amendment to the bill, the addition to the bill of exceptions of the paper marked "Jury list" would still fail to supply the necessary evidence of what took place during the impaneling of the jury. A motion asking leave to withdraw a record for the purpose of attempting to amend a bill of exceptions in the respect prayed in this case comes too late when it is not presented until long after the time for settling the bill has expired, nine months after the docketing of the error proceedings in this court, five months after the filing of an opinion in the case, and four months after the filing of the motion for rehearing. But, as we have said, even if attached to the bill of exceptions, the paper would not supply the necessary proof.

We do not wish to be understood as holding that it is necessary to preserve the *voir dire* examination of each and every juror, whether challenged or not, in order to review such alleged errors and thus unnecessarily encumber the record, but the bill of exceptions, if a party intends to predicate error upon the sustaining or overruling of challenges for cause, should, at least, contain the full examination of each juror whose qualifications are in question, and the action taken as to peremptory challenges. It is elementary that, when an appellant asks the reversal of a judgment on account of an alleged error assigned, the record of the cause filed in this court must

affirmatively show the existence of error without the aid of any matter or statement not properly a part of the record. *Hudson v. Densmore*, 68 Ind. 391; *Burt v. Panjaud*, 99 U. S. 180; *Hauser v. Roth,* 37 Ind. 89; *Organ v. State,* 26 Miss. 78; *State v. Chee Gong,* 17 Or. 635; *Morrill v. Taylor,* 6 Neb. 236; *McClure v. Lavender,* 21 Neb. 181.

When the case was submitted, our attention was not called to this condition of the record, and the opinion dealt with the questions presented by the plaintiff in error in his argument and brief; the court assuming from the points raised that the record contained the necessary proof. In the brief filed in support of the motion for rehearing our attention was called for the first time to the case of *Thurman v. State,* 27 Neb. 628, in which a conclusion the reverse of that announced in the opinion upon this point had been reached. If the record had contained evidence supporting the argument made, it then would have been necessary and proper to consider the points raised in the light of this case, but, under the well established and necessary rules of practice, we are satisfied that all that portion of the syllabus and of the opinion dealing with the impaneling of the jury should be vacated and set aside, the question not being presented by the record in the case, and this is accordingly done.

It is said that, since we inadvisedly treated this matter as being in the record, we should continue to do so, so that the plaintiff may have a new trial, and that this is a capital case; but, as was pointed out in the opinion, the defendant was tried by 12 men to each of whom he made no objection at the time of the trial. It was, apparently, a jury of fair and impartial men. Did the record indicate otherwise, it would be our duty in such a case as this to overlook technical rules in order to secure him a trial before a fair and impartial jury, but in our judgment it does not so indicate. It is equally our duty not to set aside or disregard settled principles in order to raise technical difficulties or obstructions to the due course of

justice, even though the penalty is such as is commensurate with the awful crime.

We fully indorse the statements in the opinion of Judge BARNES as to the proofs of guilt and absence of evidence that the accused was deprived of a fair trial. Though the evidence was circumstantial in so far that no witness saw the actual death blows struck, yet the overwhelming mass of incriminating circumstances fully justifies and sustains the verdict.

A number of other points are presented in the briefs and at the argument upon the motion, but we think none are of such merit as to warrant a rehearing.

For these reasons, the former opinion and syllabus are modified so as to vacate that portion treating of the impaneling of the jury, and the motion for a rehearing is

OVERRULED.

BARNES, J., and ROOT, J., concur.

ROSE, J., not sitting.

FAWCETT, J., dissenting.

The defendant is under sentence of death upon a conviction resting on circumstantial evidence. We will concede that the crime committed was a most atrocious murder, and that the evidence against the defendant is very strong, yet there is a possibility that his story may be true and he be innocent. Whenever there is any room for doubt, the law should not take a human life until the accused has been given the benefit of every safeguard which its procedure throws around him.

On the trial of this case it is clear that the district court erred in overruling the challenge for cause by defendant's counsel to at least four jurors on their *voire dire* examination. Under the rule in such a case, clearly announced by this court in *Thurman v. State*, 27 Neb. 628, the fact that neither of these four jurors finally sat on the trial of the case is immaterial if the defendant had used all his

peremptory challenges before the final twelve were sworn to try the case.  The statute of this state gives the defendant in a capital case sixteen peremptory challenges of jurors tendered, and defendant is not required to assign any reason for the exercise of such challenges.  When these challenges are exhausted, he is at the mercy of any juror tendered, who by his answers upon his *voir dire* legally qualifies himself, and defendant is compelled to risk his life upon the verdict of such juror, even though he and his counsel may know to a moral certainty that the juror is greatly biased against him.  In such a case we ought not to apply any technical rule to prevent a new trial.  On the first hearing no claim was made by the state that the "jury list," filed immediately after the jury was impaneled, was not properly before this court in the bill of exceptions, nor that it did not establish the fact that the defendant had exhausted his peremptory challenges.  On the contrary, the latter fact was conceded by the state, and the opinion of BARNES, C. J., was written upon that theory.  I think the state should be held to that admission.  If I am right in this, then a rehearing should be granted, and the defendant given another trial, before a jury selected under the established rules of procedure in this state.  While I concur in the conclusion reached by my associates which vacates a portion of the opinion and syllabus in the former opinion, I am, for the reasons hereinbefore stated, unwilling to hold that the record is insufficient to bring this case within the rule announced in *Thurman v. State, supra,* and am unable to concur in overruling defendant's motion for rehearing.

REESE, C. J., and DEAN, J., concur in the foregoing dissent.