[No. 849.]

THE STATE OF NEVADA, RESPONDENT, *v.* ROBERT H. CROZIER, APPELLANT.

JURY LAW OF 1875—REPEALING CLAUSE IN AN UNCONSTITUTIONAL STATUTE.—The principle decided in *State* v. *McClear* (11 Nev. 39), that the effect of declaring certain parts of the jury law of 1875 unconstitutional and void is to leave in full force the sections of the law of 1861, which the act of 1875 attempted to repeal, affirmed.

IDEM.—When any part of a statute is declared unconstitutional, such part is to be regarded as having never, at any time, been possessed of any legal force.

HOMICIDE NOT JUSTIFIED BY PROVOCATION.—The court instructed the jury that: "No provocation can justify or excuse homicide; but may reduce the offense to manslaughter. Words or actions, or gestures, however grievous or provoking, unaccompanied by an assault, will not justify or excuse murder; and when a deadly weapon is used the provocation must be great to make the crime less than murder:" *Held,* not erroneous. (*State* v. *Raymond,* 11 Nev. 98, affirmed.)

SUFFICIENCY OF INDICTMENT FOR MURDER.—The decision in *State* v. *Huff, ante,* to the effect that an indictment for murder drawn in the approved form of the common law is sufficient to sustain a verdict for murder in the first degree, without the use of the words deliberately and premeditatedly, affirmed.

INSUFFICIENCY OF EVIDENCE.—A verdict in a criminal case will not be reversed where there is any evidence to support it.

APPEAL from the District Court of the Fourth Judicial District, Humboldt County.

Defendant was indicted, in Elko county, for the murder of Charles Silverstein *alias* Montana Charley.

The indictment, after the caption, reads as follows: "The defendant Robert H. Crozier, above-named, is accused by the grand jury of the county of Elko, state of Nevada, of the crime of murder committed as follows, to wit: That the said Robert H. Crozier on the sixteenth day of January, A.D. 1870, or thereabouts, at the town of Elko,

in the county of Elko, state of Nevada, in and upon one Charles Silverstein *alias* "Montana Charley," unlawfully, feloniously, wilfully, and of his malice aforethought, did make an assault; and that the said Robert H. Crozier, with a certain pistol, then and there charged with gunpowder and divers leaden bullets, which said pistol, he, the said Robert H. Crozier, in his hands then and there had and held, at and against the said Charles Silverstein *alias* 'Montana Charley,' then and there unlawfully, feloniously, wilfully and of his malice aforethought, did shoot off and discharge; and that the said Robert H. Crozier, with the leaden bullets aforesaid, by means of shooting off and discharging the said pistol so loaded, to, at and against the said Charles Silverstein *alias* 'Montana Charley,' as aforesaid, did then and there unlawfully, feloniously, wilfully and of his malice aforethought, strike, penetrate and wound the said Charles Silverstein *alias* 'Montana Charley,' giving him, the said Charles Silverstein *alias* 'Montana Charley,' then and there with the leaden bullets aforesaid, by means of shooting off, and discharging the said pistol, to, at and against the said Charles Silverstein *alias* 'Montana Charley,' and by such striking, penetrating and wounding the said Charles Silverstein *alias* 'Montana Charley,' as aforesaid, one mortal wound in and upon the arms, side, ribs, lungs and heart of him, the said Charles Silverstein *alias* 'Montana Charley,' of which said mortal wound, the said Charles Silverstein *alias* 'Montana Charley,' did then and there die. All of which is contrary to the form of the statute in such case made and provided, and against the peace and dignity of the state of Nevada."

A change of venue was granted to Humboldt county, where the case was tried.

The homicide was committed in Bernard's saloon in Elko about eleven o'clock P.M. on the sixteenth of January, A.D. 1877. From the testimony it appears that the defendant Crozier, accompanied by some women of ill repute, visited the saloon, and during the evening engaged in angry conversation with one of the women. During the conversation Silverstein, the deceased, who was quietly sitting by the

stove, rose from his seat, and Crozier asked him what he was getting up for. Silverstein replied that it was none of his business; that he had said enough to the woman, and if it was not for his gray hairs, he would have interfered. Crozier replied: "That's all right!" Studied a few minutes, and said: "I guess I will take a drink;" got up, went behind the bar, washed a glass and took a drink. While he was behind the bar, the woman with whom he had been quarreling, cried out: "Look out, he is heeled! he has a gun?" She mentioned no name, but her remarks were addressed to Silverstein, and by her intended to warn him of his approaching danger. Silverstein, as some of the witnesses testified, replied: "I might be heeled some time myself, and might give him the same game." Crozier then fired his pistol, and shot Silverstein. He immediately advanced, and Silverstein commenced retreating, and begged Crozier not to fire again: "For God's sake, don't shoot me any more; you have killed me already." Silverstein jumped behind one of the witnesses in order to protect himself from further shots. Crozier advanced, caught hold of the witness, and pulled him around (Silverstein still begging not to be shot again), and succeeded in getting the witness out of the way, and fired the second shot. Silverstein fell, and died within an hour. Deceased had no weapons.

The defendant testified as a witness on his own behalf that when he heard the words: "Look out, he has a pistol," he looked up and saw Silverstein with his hands in his pockets, and supposing that Silverstein was drawing a pistol, he immediately reached down, grabbed a pistol that was lying on a shelf under the counter, raised it above the counter and fired at Silverstein. He further testified that the second shot was accidental.

Defendant having been convicted of murder in the first degree, moved the district court for a new trial upon the grounds: "First. That the verdict is contrary to the evidence and the law; Second. That the court has misdirected the jury in matters of law."

This motion was overruled by the court. This appeal is taken from the judgment and order overruling his motion for a new trial.

*T. W. W. Davies*, for Appellant:

I. The defendant was not tried by a jury. As disclosed by the record, the plaintiff was permitted to peremptorily challenge a number of persons who had been called to act as jurors, and had been passed for cause. Section 335, criminal practice act, is no longer in force, having been repealed by act of March 2, 1875. (Sec. 10, p. 119, Stat. 1875.) Certain portions of the act of 1875 have been declared unconstitutional, but it is not in the power of the judiciary to restore or re-enact a repealed law. It was error to allow peremptory challenges, and it is impossible to say what bearing such action had on the verdict in this cause. Unless the persons composing the so-called jury were obtained in the way provided by law, such a body would not be a jury, no matter if it was made up of good and true men, and a trial before such persons would not be, in any sense, a trial by jury. (*People* v. *Ybarra*, 17 Cal. 171; *People* v. *Williams*, 18 Cal. 194.) If any error intervenes in the proceedings, it is presumed to be injurious to the prisoner, and generally he is entitled to a reversal of the judgment, for it is his constitutional privilege to stand upon his strict legal rights, and to be tried according to law. (*State* v. *Parsons*, 7 Nev. 57.) The true rule is, when error intervenes on the trial of a criminal cause, it is presumed to be to the injury of the defendant, unless it is shown by the state that no injury thereby could possibly have resulted.

II. The verdict is wholly unsupported by the evidence.

III. The court erred in giving the first instruction asked by the plaintiff, as follows: "No provocation can justify or excuse a homicide, but may reduce it to manslaughter." "Provocation" means *cause, inducement, calling forth*, and in the connection in which it is used, it is equivalent to saying to the jury that: "No cause is sufficient to justify or excuse a homicide." The court doubtless intended to say that no provocation of mere words was sufficient to justify or excuse a homicide.

IV. The court also erred in instructing the jury concerning murder in the first degree, it not being charged against

the defendant in the indictment, and no higher crime being charged than murder in the second degree. To constitute murder in the first degree, the killing must be done with deliberate premeditation. Our statute requires the offense to be fully charged. It cannot be said that murder in the first degree is fully charged, or charged at all, when the essential element to constitute that crime, deliberate premeditation, is entirely omitted in the indictment. The statute in this case provides higher punishment for murder in the first degree than in the second, and therefore this added element must be charged in the indictment, else the indictment charges only what merits the lower punishment. No court in this state is warranted in condemning a man to be hung upon an indictment wherein the special element making the killing murder in the first degree is not charged. (Bishop Stat. Cr., sec. 368 *et seq.* and also sec. 465 *et seq.*; 2 Bishop Cr. Proc'd., sec. 562–98; 1 Bishop Cr. Law, sec. 600–797; *State* v. *McCormick*, 27 Iowa, 402, and cases cited; *Bryan* v. *State*, 45 Ala. 86.)

*John R. Kittrell, Attorney-General*, for Respondent, orally argued the case before the supreme court.

By the Court, HAWLEY, C. J.:

Appellant was convicted of murder in the first degree.

1. It is claimed that section 335 of the criminal practice act, which allows peremptory challenges to be interposed in criminal cases, was repealed by the act of March 2, 1875, and it is therefore argued that the court erred in allowing peremptory challenges to be taken by the state. This position is wholly untenable. It was distinctly announced in *The State* v. *McClear* (11 Nev. 39), that the effect of declaring the act of March 2, 1875, void, in so far as it provided a mode of impaneling a jury, was to leave in full force the sections of the law of 1861 which the act of 1875 attempted to repeal.

It is true there are some authorities which hold that, where the repealing clause in an unconstitutional statute repeals all inconsistent acts, the repealing clause is to stand

and have effect, notwithstanding the invalidity of the rest. But the great weight of authority is "that such repealing clause is to be understood as designed to repeal all conflicting provisions, in order that those of the new statute can have effect; and that, if the statute is invalid, nothing can conflict with it, and therefore nothing is repealed." (Cooley's Const. Lim. 186, and authorities cited in Note 2.)

When any part of a statute is declared unconstitutional, such part is to be regarded as having never, at any time, been possessed of any legal force.

We again repeat, that as that part of the act of 1875 providing a mode for impaneling a jury was declared unconstitutional in the *State* v. *McClear*, the effect of that decision was to leave in full force all prior existing laws regulating the mode of impaneling juries which said act attempted to repeal.

2. The first instruction of the court, that "No provocation can justify or excuse homicide, but may reduce the offense to manslaughter," etc., is copied from *State* v. *Raymond* (11 Nev. 98), and was there held to be correct.

3. The point urged by counsel that the defendant could not be found guilty of murder in the first degree because the indictment does not contain the words "deliberately and premeditatedly," in addition to the words "unlawfully, feloniously, willfully and of his malice aforethought," was carefully considered and fully answered in *State* v. *Huff*, recently decided by this court, and the opinion in that case renders it unnecessary for us to again review the authorities. The indictment in this case is drawn in the approved form of the common law, and we have always held such indictments to be sufficient. (*State* v. *Raymond*, 11 Nev. 98; *State* v. *Larkin*, 11 Nev. 314.)

4. The testimony in this case, in our judgment, fully warrants the verdict found by the jury. We have repeatedly declared that a verdict in a criminal case will not be reversed where there is any evidence to support it.

The appeal in this case is utterly devoid of merit.

The judgment and order overruling defendant's motion for a new trial are affirmed, and the district court is directed to fix a day for carrying its sentence into execution.