[No. 1129.]

## THE STATE OF NEVADA, Respondent, v. AH KUNG AND ONG GEE, Appellants.

Assault With Intent to Kill—Testimony Insufficient to Sustain Conviction.—A verdict in a criminal case, finding defendant guilty of an offense, cannot be sustained unless there is some fact shown tending to establish his guilt, which is inconsistent with his innocence. Testimony reviewed and held insufficient to sustain conviction.

Appeal from the District Court of the Fourth Judicial District, Humboldt County.

The facts are stated in the opinion.

*M. S. Bonnifield*, for Appellants.

*M. A. Murphy*, Attorney-General, for Respondent.

By the Court, Leonard, J.:

The defendants were indicted for the crime of assault with a deadly weapon, with intent to kill one Ah See.

Defendant Ong Gee was convicted of the crime charged. It is not shown by the record that defendant Ah Kung was tried.

Defendant Gee moved for a new trial upon the ground that the verdict of the jury was contrary to the evidence. This appeal is taken from an order overruling that motion, and from the judgment.

The indictment charges that the assault was made with "a pistol, loaded with gunpowder and leaden bullets, in the hand of the said Ah Kung, then and there had and held, with intent then and there unlawfully, wilfully and feloniously to kill the said Ah See."

Both of the defendants were charged as principals. And, although none of the instructions are embodied in the bill of exceptions, it is doubtless true, as appears from the indictment, that the theory of the state was that Gee was an accessory before the fact, aiding, abetting or counseling the commission of the crime charged. As such it was proper to indict and try him as a principal. (*State* v. *Chapman*, 6 Nev. 321.)

If there was no evidence proving, or tending to prove, him guilty as principal or accessory before the fact, he was illegally convicted and is entitled to a new trial. (*State* v. *Stewart*, 6 Nev. 177.)

On the other hand, it is well settled in this state that a judgment in a criminal case will not be reversed on the ground that the verdict is contrary to the evidence, if there is any evidence to support it. (*State* v. *Raymond*, 11 Nev. 109; *State* v. *Crozier*, 12 Nev. 300.)

Much of the testimony admitted was undoubtedly incompetent, but the court provided appellant with counsel, and it does not appear that any part of the testimony was objected to at any time during the trial, or that any motion was made to strike it out. Its illegality was waived, and the jury was bound to consider it in making up their verdict. (*Bishop* v. *State of Georgia*, 9 Ga. 125; *Stone* v. *State*, 4 Hump. 35; *State* v. *Gordon*, 1 R. I. 191.)

There was positive evidence that Ah See was shot in the neck. He testified as follows: "I did not know who shot me when I was shot last March. When the gun fired I saw Kung and defendant run. Ah Gee ran towards Tong Ting's. I only saw Ah Gee start towards Tong Ting's. * * * I saw Kung with the gun in his hands. I did not see Ah Gee when I was coming out of the Hong house, and did not then know whether he was then in the house or not. I did not see anybody close to Kung when he (Kung) fired the gun. Ah Gee did not have hold of me when Kung fired the gun, and I did not see him then. * * * I know I was shot; don't know who did it, but think Ah Kung did. After I was shot, and when in Sam Wo Lung's house, I can't tell if any white man brought Ah Gee in there to me; I can't recollect if defendant, Gee, came to the house or not; I was in such pain 1 can't tell if anybody came there or not; I do not remember anything that occurred during the week or ten days after I was shot. I do not remember of any white man coming in and lifting me up; do not remember of pointing out the defendant, Ah Gee, as the man who shot me, or of seeing him at the house. * * * The evening I was shot I came out of the door of the Hong gambling house and walked along to the place where I was shot.

I then saw defendant run; saw him for ten steps.    As soon as I was shot I saw Ah Kung run and disappear behind a large building.    I was gambling in the Hong house with Ah Kung, and Ah Kung and Ah Gee were both there.    Ah Kung and Gee were friends.    Ah Kung and I had disputed about gambling before I came out, and while we disputed, Ah Gee came in.    I had not talked with Ah Gee, and Ah Gee had not played."

Ah Kung and Ah Gee belonged to one company and Ah See to another.

Several of the grand jurors who found the indictment testified that they took Ah Gee to the place where Ah See was lying, to see if the latter could identify Ah Gee; that Gee seemed unwilling to go towards See; that he hung back, and one of the jurors forced him up; that he held his hat over his face; that Ah See said he knew defendant, and that he was one of the men who shot him; that Ah See seemed in great pain at the time, but the witnesses thought he was in a proper state to tell the truth.

The deputy sheriff testified that before he arrested Ah Gee, Ah See described defendant as the man who shot him; that when he made the arrest, Ah Gee was in a Chinese cellar with other Chinamen; that Ah Sam, who was with him, pointed out Ah Gee, and said "there he is," and that defendant got up and ran out of the cellar; that he pursued him, and overtook and arrested him at the top of the cellar stairs; that while defendant was running he called out to him to stop, but defendant paid no attention to the call, and continued to run; that not more than fifteen or twenty minutes after the shot was fired he talked with Ah See, when he was wounded, and that Ah See described the defendant as the one who shot him.

Mr. Gilson, who went with the grand jury, testified that Ah See was in a critical condition; that he did not want to talk at all; that his mind seemed to be confused.

The deputy sheriff further testified that he went a second time to see Ah See, and took Ah Gee with him; that Ah See seemed much worse; that he placed Ah Gee where Ah See could have a view of him, and asked, "Is this the man who shot you?" that Ah See said, "Yes, this is the man that shot

me;" that he asked again, "Are you sure, now?" and Ah See replied, "Sure, that is the man who shot me." We have stated all the testimony against the defendant, and do not think there was any evidence inconsistent with his innocence:

The testimony of Ah See only amounted to this: That Ah Gee came into the gambling-house while he was disputing with Ah Kung, but that Gee said nothing and took no part in the dispute; that both Kung and Gee went out; that Kung did the shooting (as the indictment charged); that defendant ran.

It was not claimed that Ah Gee shot Ah See, and the latter's statement to the effect that Ah Gee was the man who shot him could not have been true, even though he was in a conscious condition of mind. All he could have meant was that Ah Gee was present, aiding and encouraging Ah Kung: But the statement was, at most, only a conclusion of law. He stated no fact showing that he was an accessory before the fact, save that he ran away after the shot was fired. But that the most innocent man alive might have done. He may be a coward. He might have been so situated that he was afraid of being shot himself. He might have wished to avoid being mixed up in the affair as a witness or otherwise. Nor is the fact that he ran when the deputy sheriff arrested him any evidence that he aided, assisted or encouraged Ah Kung. There is no evidence that he knew what was wanted of him. He might have been afraid of the other Chinamen who accompanied the sheriff. He might have thought they came to do something else besides causing his arrest for the crime of which he was charged. He may have thought the sheriff came to arrest him for the commission of some other crime of which he felt guilty.

The rule is that the facts proven shall not only be consistent with the guilt of the accused, but inconsistent with any other rational conclusion.

It is the province of the jury to judge of the weight of the evidence, but the verdict cannot be sustained unless there is, at least, some fact shown tending to establish his guilt, and which is inconsistent with his innocence.

We think there was no testimony of that character in this case, and the judgment and order appealed from are reversed.