# REPORTS OF CASES

## DETERMINED BY

# THE SUPREME COURT

### OF THE

# STATE OF NEVADA

## OCTOBER TERM, 1918

[No. 2279]

## THE STATE OF NEVADA, RESPONDENT, v. CHRIS MILOSOVICH, APPELLANT.

[175 Pac. 139]

1. JURY—EXAMINATION BY COURT.
    Court did not err, in a homicide case, in asking jurors on their voir dire whether they had any conscientious scruples against the infliction of the death penalty; there being nothing to indicate that the evidence would not sustain such a verdict.

2. JURY—QUALIFICATIONS—OPINION.
    An opinion based merely on rumors and newspaper reports does not disqualify a juror.

3. CRIMINAL LAW—REMARKS OF COUNSEL.
    A ruling, on exception to remarks of accused's counsel as to what he was going to prove, that accused could not prove such matter, was not prejudicial, where the record does not show an offer of a proposed further statement.

4. CRIMINAL LAW—MATTERS REVIEWABLE—BRIEFS.
    The supreme court need not pass on an assignment to rulings on evidence, where the questions objected to are not quoted in the brief, nor reference made to the place in the bill of exceptions where the questions and rulings appear.

5. WITNESSES—IMPEACHMENT—INTOXICATION.
    It may be proper to offer evidence to show that at a particular time a witness was in such an intoxicated state that he could not comprehend what transpired, but it does not follow that a hard drinker is untruthful.

6. CRIMINAL LAW—CROSS-EXAMINATION OF ACCUSED.
    The court has wide latitude as to allowing state's counsel on cross-examination of accused to go into matters as to his prior life, and a conviction will not be reversed, except for abuse of discretion.

7. CRIMINAL LAW—EYEWITNESSES—NECESSITY FOR CALLING.
    It is not obligatory upon a district attorney to call all of the eyewitnesses to a transaction charged to be a crime.

8. HOMICIDE—INSTRUCTION—"PROVOKE."
    An instruction: "That no provocation can justify or excuse homicide, but may reduce the offense to manslaughter. Words or actions, or gestures, however grievous or provoking, unaccompanied by an assault, will not justify or excuse murder"—was proper, the word "provoke" meaning only to irritate, excite, or enrage.

9. HOMICIDE—HARMLESS ERROR—INSTRUCTIONS.
    Inconsistency of instructions as to the difference between first- and second-degree murder is harmless, where accused is convicted of murder in the second degree.

10. HOMICIDE—MURDER—DEGREE—DELIBERATION.
    Deliberation under Rev. Laws, 6384, and Stats. 1915, c. 48, does not of itself constitute an element of either degree of murder, but simply enters into consideration in determining whether the crime was committed with or without express malice.

11. HOMICIDE—MALICE—SUFFICIENCY OF EVIDENCE.
    Evidence *held* sufficient to show malice under Rev. Laws, 6384, and Stats. 1915, c. 48, in a homicide case, although accused had known deceased only a few hours.

12. WITNESSES—BIAS—CROSS-EXAMINATION.
    Where accused was charged with killing another with a syphon bottle, it was error to overrule objection to a question, asked accused's witness on cross-examination, as to whether another girl had not said that accused "asked us girls not to say anything about the syphon bottle," although asked for purpose of showing bias of the witness, since defendant should have first been connected with such statement.

APPEAL from Second Judicial District Court, Washoe County; *R. C. Stoddard,* Judge.

Chris Milosovich was convicted of murder in the second degree, and he appeals. **Reversed.**

*M. B. Moore* and *Hoyt, Gibbons, French & Springmeyer,* for Appellant:

The defendant did not have a fair and impartial trial. The court erred to the prejudice of the defendant, and against his constitutional rights, in refusing challenges to certain jurors. Defendant was entitled to a trial by

twelve impartial men. Defendant was forced to go to trial with at least four men in the jury box whose minds, at the time the trial commenced, were prejudiced, and in two instances made up. 24 Cyc. 295–300; State v. Raymond, 11 Nev. 107; State v. McClear, 11 Nev. 39; State v. Salgado, 38 Nev. 64; State v. Roberts, 17 Pac. 798; State v. Buralli, 27 Nev. 41; State v. Williams, 28 Nev. 409; State v. Casey, 117 Pac. 5; State v. Beatty, 25 Pac. 899; State v. Murphy, 37 Pac. 420.

The court erred in its rulings upon certain evidence, particularly in its refusal to permit the defendant to show the bad character and lack of credibility of the principal witness for the state; and the failure of the state to call to the stand an eyewitness who had been subpenaed by the prosecution was prejudicial to the defendant. It is the duty of the district attorney to aid and assist the court and the defendant, to the extent that the defendant shall have a fair and impartial trial. The district attorney is an officer of justice whose duty it is to aid in the administration of justice and to prevent injustice from being done. He should present at a trial any facts and circumstances tending to show innocence and insure justice, and let the jury determine from all the facts the guilt or innocence of the defendant. Territory v. Hanna, 5 Pac. 252; Hurd v. People, 25 Mich. 415; Mayer v. People, 10 Mich. 226; Roscoe, Crim. Ev. 135; State v. Beatty, 25 Pac. 889; People v. Choy Ah Sing, 84 Cal. 276; People v. Dixon, 94 Cal. 255; Elder v. State, 86 Am. St. Rep. 220, 65 S. W. 938.

It was erroneous for the court to permit certain cross-examination of the defendant by the district attorney. The defendant was called as a witness and testified in his own behalf, and as such was properly subjected to cross-examination upon the subjects as to which he had been examined in chief. However, the district attorney was permitted, over the objection of counsel for defendant, to inquire into every phase of the defendant's past life, the aim of the state clearly being to place him in a prejudicial light before the jury.

If the defendant was guilty of any offense against the

law, under the evidence in the case, it was manslaughter only; there was no evidence of ill-feeling or malice on the part of the accused; no evidence of a thought in the mind of the defendant to take the life of the deceased. There was an utter lack of deliberation, malice, or intent to kill. Wharton on Homicide, 126, 252; Miller v. People, 30 Mich. 16; Lahan v. Commonwealth, 84 Pac. 80; People v. Edgar, 25 Cal. 268, 167 Pac. 891; People v. Freel, 48 Cal. 436; Murphy v. State, 31 Ind. 511; Steel v. Scott, 37 Nev. 412; Maher v. People, 81 Am. Dec. 781.

The trial judge erred in giving any instructions to the jury upon second-degree murder. When the evidence presented is sufficient only to warrant a conviction of manslaughter, it is manifest error to give any instructions upon any higher degree. There was error, likewise, in the giving of other instructions, as well as in the refusal of the court to give certain instructions requested by the defense. The court did not state or offer to state the reasons for the refusal of said instructions. Where there is a lack of intention to take life at the time the blow is delivered, there cannot be a conviction of murder in the first or second degree, or of voluntary manslaughter. Maher v. People, 81 Am. Dec. 781; People v. Freel, 48 Cal. 437; State v. Ah Mook, 12 Nev. 390.

The court instructed the jury "that no provocation can justify or excuse the killing of a man." This was palpable and gross error. State v. Skinner, 32 Nev. 70; Rev. Laws, 6394, 6396, 6397, 6400, 6401; Sanders v. State, 113 Ga. 267; People v. Vanderpool, 1 Mich. N. P. 264; Maher v. People, 10 Mich. 212; State v. Lodge, 33 Atl. 312; Stout v. State, 90 Ind. 1; State v. Jones, 47 Atl. 1006; Commonwealth v. Webster, 59 Mass. 295; People v. Messersmith, 57 Cal. 575.

*Geo. B. Thatcher,* Attorney-General, and *Edward F. Lunsford,* District Attorney, for Respondent:

If a challenge to a juror is based upon implied bias, reasons must be set forth in detail, a general objection

not being sufficient. Rev. Laws, 7148; State v. Randall, 11 Nev. 99; State v. Simas, 25 Nev. 434; State v. Salgado, 38 Nev. 64. The same rule applies as to a challenge for actual bias. State v. Salgado, supra. If it appear to the court that he can act fairly and impartially, notwithstanding an opinion as to the guilt or innocence of the defendant based upon public rumor or common notoriety, a juror shall not be disqualified. State v. Millain, 3 Nev. 409; State v. Williams, 28 Nev. 395.

The fact that a witness occasionally drinks to excess, or is otherwise indiscreet, does not affect his credibility. Holtz v. State, 44 N. W. 1107. Proper foundation has been laid for the admission in evidence of voluntary statements made by the accused after his arrest. State v. Carrick, 16 Nev. 129; State v. Mircovich, 25 Nev. 487; State v. Dye, 36 Nev. 143. It was proper to question two witnesses for the defense, for the purpose of affecting their credibility, as to a discussion of the case by them, in which one had endeavored to influence the other to withhold certain parts of her testimony. "The interest or bias of a witness may always be shown in this manner." Underhill, Crim. Ev. (2d. Ed.), sec. 248; State v. Cook, 88 Pac. 240. That counsel may avail himself of a ruling on evidence, he must assign the particular ground on which he relies in his exception. State v. Jones, 7 Nev. 408; State v. Murphy, 7 Nev. 394; State v. Lawrence, 28 Nev. 440. The extent to which cross-examination may be carried rests in the sound discretion of the court, and only an abuse of this discretion is cause for reversal on appeal. Smith v. State, 74 N. E. 983; Shields v. State, 49 N. E. 351; Underhill, Crim. Ev. (2d Ed.), sec. 245.

Murder in the second degree may be committed without an intention to kill. The failure of the court to give requested instructions as to voluntary manslaughter did not prejudice the defendant. State v. Millain, 3 Nev. 409; State v. Smith, 10 Nev. 118; People v. Gordon, 88 Cal. 422; People v. O'Neal, 67 Cal. 378; People v. Stevens, 75 Pac. 62; State v. Johnny, 28 Nev. 224.

Upon questions of fact, the supreme court will not disturb the findings of the jury, if there is substantial evidence to support them.    State v. Wong Fung, 22 Nev. 336; State v. Buralli, 27 Nev. 41; State v. Hancock, 28 Nev. 300; State v. Preston, 30 Nev. 301; State v. Thompson, 31 Nev. 309; State v. Whittaker, 39 Nev. 159.    A verdict in a criminal case will not be reversed where there is any evidence to support it.    State v. McGinnis, 6 Nev. 109; State v. Raymond, 11 Nev. 98; State v. Crozier, 12 Nev. 300; State v. Mills, 12 Nev. 403.

The words "wilfully, deliberately, and premeditatedly" form the basic distinction between murder in the first and second degree.    At common law, which is unchanged so far as this point is concerned, the killing which was committed without legal justification and with malice aforethought was murder in the second degree, and in order to raise it to murder in the first degree, it was necessary to prove that the killing was done "wilfully, deliberately, and premeditatedly."    State v. Wong Fung, 22 Nev. 336; State v. Millain, 3 Nev. 409; State v. Anderson, 4 Nev. 265; People v. Valencia, 43 Cal. 552; People v. James, 57 Cal. 115.

By the Court, COLEMAN, J.:

Appellant, having been convicted of murder in the second degree, has appealed.    We do not think it necessary to make a detailed statement of the facts, as sufficient will be stated in considering each error to make our point clear.

1. It is first contended by counsel for appellant that the judge who presided at the trial was guilty of conduct prejudicial to the defendant in inquiring of each of the jurors, when examined on their voir dire, if he entertained any conscientious scruples against the infliction of the death penalty.    The indictment charged a crime for which the jury could have imposed the death penalty, and there was nothing to indicate to the judge at the time of the selection of the jury that the evidence would not justify such a verdict; and, though the district

attorney in his opening statement indicated to the jury
that he would not ask for the death penalty, that was
after the jury had been selected and sworn to try the
case. We are not convinced that, when the indictment
and evidence justify a verdict fixing the death penalty,
the district attorney can prevent the jury from finding
a valid verdict fixing such penalty; but we are convinced
that when the indictment charges a crime for which the
death penalty may be fixed, and there is nothing to
indicate to the court that the evidence will not sustain
nor the district attorney ask for such a verdict, the
court commits no error in inquiring of the jurors as it
did in the case at bar.

Error is assigned to the action of the court in over-
ruling challenges of certain jurors. The challenges
were not specific, as required by section 7150 of the
Revised Laws. We have several decisions holding
adversely to the contention of appellant, and there is
no reason to consider this assignment, further than to
say that it is without merit. State v. Raymond, 11 Nev.
99; State v. Salgado, 38 Nev. 64, 145 Pac. 919, 150
Pac. 764.

2. The assignment of error based upon the refusal of
the court to sustain the challenge to the juror Finn
demands consideration. This juror stated upon his voir
dire, in response to questions by counsel for defendant,
that he had talked about the case with persons who pur-
ported to know the facts, and that he had formed an
unqualified opinion as to the guilt of the defendant.
Thereafter he was examined by the district attorney.
We quote:

"Q. Mr. Finn, the party about whom you have been
speaking as having told you something about the case,
is that any of the witnesses whose names have been
mentioned here? A. No.

"Q. Did that party say they had talked to any of the
witnesses to the transaction? A. Did not.

"Q. Did they express an opinion in your presence?
A. Yes, sir.

"Q. Did they claim to be present at the time this thing happened? A. No.

"Q. Just expressed their opinion based upon reading the articles about it in the paper? A. I think so, and what they heard.

"Q. And what they heard? A. Yes.

"Q. Did they state to you they had heard from any eyewitnesses what had occurred? A. No, they didn't state that they heard it from any eyewitness.

"Q. Just general rumor, was it? A. That is what I should judge.

"Q. Mr. Finn, if chosen as a juror, in this case, don't you suppose you could set aside your opinion and listen to the evidence and try it squarely upon the evidence you hear on the stand here, without reference whatever to the opinion that you might have at this time? A. I think so.

"Q. Think you can. You have served as juror in criminal cases before, haven't you? A. Yes, sir.

"Q. Do you think there is any reason in your mind at this time why you could not serve fairly and impartially in this trial? A. I don't know of any.

"Q. And any opinion that you might have at this time, if sworn as a juror, you would set aside and just try this case upon the evidence you hear here in court, is that true? A. I would.

The Court:

"Q. Do I understand, Mr. Flint, that what you heard was based on public rumor and publications in the newspapers? A. Yes, sir.

"Q. You understand the rule of law that a defendant in a criminal case is presumed to be innocent until he is proven guilty beyond a reasonable doubt? A. Yes, sir.

"Q. You would give that benefit—the benefit of that presumption—to the defendant in this case, if you sat as a juror? A. I would.

"Q. And I understand that you can and will, notwithstanding the opinion that you have entertained or do

entertain, that you will thoroughly and impartially act upon the matters in this case, that is, from the evidence and the instructions of the court? A. Yes, sir.

"Q. And you will consider nothing else? A. No sir."

We think this assignment falls squarely within the rule laid down by this court in State v. Williams, 28 Nev. 395, 82 Pac. 353, wherein it is said:

"In this era of education, intelligence, and diffusion of knowledge, when the telegraph and the cable flash information from the most distant parts of the earth in a few seconds, when an army of men are employed in gathering and reporting the important happenings of the world, and improved printing presses, invented and operated by ingenious minds and cunning hands, are publishing millions of papers daily, the man who does not read and think and form opinions regarding such crimes as murders committed in his locality is better fitted to have lived in the dark ages than to serve on juries in the twentieth century. Still, in order to be a good juror, any opinion he may have must be a qualified one, and he must conscientiously feel that he can discard it in arriving at a verdict, and realize that under our system of jurisprudence persons charged with crime are not to be prejudged or convicted upon newspaper reports or hearsay, or found guilty by anything excepting evidence introduced in court under the sanctity of an oath or in conformity to legal practice. Every one, however humble or great, accused of crime, is entitled to be tried by jurors whose minds will be guided by such evidence only in arriving at their verdict. It is apparent that the juror was not disqualified under this test, that the opinion he possessed was only such an one as any disinterested, intelligent citizen who reads and thinks might form, and, although that opinion would naturally remain in his mind until something occurred to remove it, it appears to have been qualified by a doubt as to the truth or falsity of the information on which it was based, and that it was not a settled conviction regarding

the defendant's guilt which would weigh with him in considering the testimony or swerve or influence his mind in arriving at a verdict."

**3.** It is earnestly insisted by counsel for appellant that the court committed prejudicial error in connection with the opening statement of counsel for appellant. We quote from the record:

"Mr. Moore—We will also show that Eva Dowling was not only drunk on that night, but that she is known as an habitue of the cabarets, getting drunk on frequent occasions.

"Mr. Lunsford—Now, just pardon the interruption.

"Mr. Moore—Yes, sir.

"Mr. Lunsford—If the court please, I desire to except to the remarks of counsel at this time, because he well knows that under the rule of evidence he would be precluded from showing anything of the kind.

"The Court—That is the view the court will take at this time, until the matter is presented.

"Mr. Moore—I shall object to the ruling of the court, and state that I shall make the offer of the testimony.

"The Court—You may make the offer when the time comes, but you will not argue the matter to the jury at this time, Mr. Moore.

"Mr. Moore—And I also wish to take an exception and make the further objection to the ruling of the court in precluding me from making a statement of what we expect to prove to the jury.

"The Court—You are not precluded from making a proper statement. You may proceed."

We are unable to perceive any error in what transpired. In the first place, by his statement he got to the jury at least a portion of what he had contemplated. He cannot complain of that; and, since no offer appears in the record of a proposed further statement, it is impossible for us to say that counsel did not state all that he intended or desired to state. For us to imagine that he contemplated stating something not appearing in the record by way of offer would be going a long way

toward assisting in the preparation of a ground as the basis for the establishment of error.

4, 5. Counsel also argue that the court erred in sustaining an objection to certain questions asked on cross-examination. The questions are not quoted in the brief, nor is our attention directed to the place in the bill of exceptions where the questions and rulings appear. We are left to the alternative of surmising the questions or combing the record to ascertain the matter urged as reversible error; and, while we do not feel called upon to do either, we will (with a warning to counsel generally not to indulge in the practice) consider the point sought to be presented. The point in question goes to the ruling of the court in sustaining an objection to a line of questions asked a certain witness relative to her getting drunk, for the purpose of affecting her credibility. We think the court was right in sustaining the objection. It may be proper to offer evidence to show that at a particular time a witness was in such an intoxicated state that he could not comprehend what transpired; but we have yet to learn that, because a person has been a hard drinker, it follows that he is untruthful. In fact, we think it to be well known that many men who are scrupulously truthful are inveterate drinkers. 40 Cyc. 2612.

6. Appellant contends that the court erred in overruling an objection to certain questions asked defendant on cross-examination as to his prior life. Counsel for appellant does not quote in his brief the matter objected to, nor call our attention to the place in the record where it may be found; hence we will simply say that in such matters the court has a wide latitude, and unless it abuses its discretion the judgment will not be reversed. This identical question was before the court in State v. Lawrence, 28 Nev. 440, 82 Pac. 614, where the widest latitude was allowed, and the court held that no prejudicial error was committed.

7. It is contended that the district attorney was guilty of conduct during the trial necessitating the

granting of a new trial in not calling as a witness
Daisy Reeves, who was present during most of the
time when the events leading up to the homicide
transpired, and our attention is directed to the follow-
ing authorities: Territory v. Hanna, 5 Mont. 248, 5
Pac. 252; Hurd v. People, 25 Mich. 415; Maher v. Peo-
ple, 10 Mich. 226, 81 Am. Dec. 781; Roscoe, Crim. Ev. p.
135. Roscoe states the rule relied upon as follows:

"On a trial for murder, where the widow and daughter
of the deceased were present at the time when the fatal
blow was supposed to have been given, and the widow
was examined on the part of the prosecution, Patterson,
judge, directed the daughter to be called also, although
her name was not on the indictment, and she had been
brought to the assizes by the other side. The learned
judge observed: 'Every witness who was present at a
transaction of this sort ought to be called; and, even if
they give different accounts, it is fit that the jury should
hear the evidence, so as to draw their own conclusions
as to the real truth of the matter.' "

The rule laid down in the quotation is what might be
designated the old English rule, and grew out of the
fact that the defendant was not entitled to call witnesses
in his own behalf in capital cases; but under the prac-
tice in the United States the defendant may call, at the
expense of the state, where he is not financially able to
bear the expense himself, witnesses in his behalf. Since
the old English rule does not exist in the United States,
practically all of our courts hold, and we think rightly,
that it is not obligatory upon the district attorney to
call all of the eyewitnesses to the transaction. The
reason for the American doctrine is elaborated upon in
State v. Barrett, 33 Or. 194, 54 Pac. 807, and Ross v.
State, 8 Wyo. 351, 57 Pac. 929. See, also, 12 Cys. 550;
Bullock v. State, 73 Tex. Cr. R. 419, 165 S. W. 196.

8. It is strenuously contended that the court erred in
giving instruction No. 27, which reads as follows:

"You are instructed that no provocation can justify
or excuse homicide, but may reduce the offense to
manslaughter. Words or actions, or gestures, however

grievous or provoking, unaccompanied by an assault, will not justify or excuse murder; and, when a deadly weapon is used, the provocation must be great to make the crime less than murder."

It is contended that the pivotal point in this instruction turns upon the meaning of "homicide," since homicide is the killing of one human being by another, regardless of the circumstances surrounding the killing; that the correct interpretation of the instruction quoted, and the way in which it must be deemed to have been construed by the jury, is that no act on the part of the person killed could have justified the defendant who did the killing, even though it was done in self-defense, notwithstanding the fact that our statute provides that one who kills another in necessary self-defense is justified in so doing. We think there is no merit in this contention. This court in two cases held the contrary view: State v. Raymond, 11 Nev. 98; State v. Crozier, 12 Nev. 300. In the first case mentioned, the instruction complained of does not appear in the opinion of the court; but it does appear in the statement of counsel for appellant. In both of the cases the court gave the point scant consideration, but nevertheless we are satisfied from our investigation that the conclusion reached in those cases was right. In our view, the question turns upon the interpretation put upon the word "provocation," rather than upon the word "homicide." In Casner v. State, 43 Tex. Cr. R. 12, 62 S. W. 914, it is said:

" 'Provoke,' as ordinarily understood, means "to excite to anger or passion; to exasperate; to irritate; to enrage.' Cent. Dict. This is the meaning of the word under the statute authorizing courts to charge the law provoking the difficulty."

See, also, Ruble v. People, 67 Ill. App. 439; State v. Warner, 34 Conn. 276.

"Provocation" in law is defined by the Standard Dictionary to be:

"Such conduct as may serve to justify or palliate an assault, or to reduce an intentional homicide to manslaughter."

In the light of these definitions, the instruction reads, in substance, as follows:

"You are instructed that no words or conduct which irritates, excites, or enrages can justify or excuse homicide, but may reduce the offense to manslaughter," etc.

Since no one is justified in taking the life of another, except in self-defense, and since to cause another to be irritated, excited, or enraged does not put his life in danger, it will be seen that the objection to the instruction is not well taken.

**9, 10.** It is contended that the court erred in giving what is claimed to be conflicting instructions concerning the crime of murder. It is said that instruction No. 19, wherein the jury is told that, "even if the evidence fails to show beyond a reasonable doubt that the said killing was committed wilfully, deliberately, and premeditatedly, still if the evidence shows beyond a reasonable doubt that the same was committed without legal justification and with malice aforethought, as defined in these instructions, then you should find the defendant guilty of murder in the second degree," is in conflict with that portion of instruction No. 20, which reads:

"The unlawful killing must be accompanied with a deliberate and clear intent to take life in order to constitute murder."

The point urged is that in No. 19 the court instructed that, if the evidence fails to show that the killing was committed deliberately by the defendant, he might be guilty of murder in the second degree, while in instruction No. 20 the jury is told that the killing must be with a deliberate intent, etc. These instructions are conflicting, but we do not see how appellant was prejudiced thereby. "Murder" is defined to be:

"An unlawful killing of a human being, with malice aforethought, either express or implied." Rev. Laws, 6384.

"Express malice is that deliberate intention unlawfully to take away the life of a fellow creature, which is manifested by external circumstances capable of proof.

Malice shall be implied when no considerable provocation appears, or when all the circumstances of the killing show an abandoned and malignant heart.

"All murder which shall be perpetrated by means of poison, or lying in wait, or torture, or which shall be committed in the perpetration, or attempt to perpetrate, any arson, rape, robbery, or burglary, or which shall be committed by a convict in the state prison serving a sentence of life imprisonment, shall be deemed murder of the first degree; and all other kinds of murder shall be deemed murder of the second degree." Stats. 1915, p. 67.

Deliberation in murder, under our statute, as it will be seen, does not of itself constitute an element characteristic of either degree of murder. It simply enters into consideration in determining whether the crime was committed with or without express malice; and, as murder in the second degree may be committed with either express or implied malice, we are unable to see wherein appellant was injured. Had the court given conflicting instructions relative to murder in the first and second degree, and had appellant been found guilty of murder in the first degree, then it is clear that reversible error would have been committed; or had the court given conflicting instructions, one pertaining to murder in the second degree and the other to manslaughter, and had defendant been convicted of murder in the second degree, reversible error would have been committed; but, had he been convicted of the lower offense, there would have been no reversible error, as he would not have been injured.

11. It is next contended that the evidence shows that, if the defendant was guilty of any offense, it was only manslaughter and not murder; and to sustain this contention it is said that defendant and deceased had never met prior to the evening of the homicide, and hence there could have been no grudge to satisfy. While it is probably true that murder oftener than otherwise grows out of an old grudge, such a condition is by no means

essential to the commission of the crime. Pursuant to statute, malice essential to murder shall be implied when no considerable provocation appears. The evidence in this case shows that there had been more or less misunderstanding between the deceased and defendant during the entire evening prior to the trouble between them, and the jury was warranted in implying that malice existed. Without reviewing the evidence, we may say that it amply sustains the verdict.

12. It is next asserted that the court erred in overruling an objection to a question asked Daisy Reeves, a witness for the defense, upon cross-examination, relative to a statement made to the witness by Mary Lusich, in which the latter said to Daisy Reeves that the defendant had "asked us girls not to say anything about the syphon bottle." The syphon bottle was the instrument with which it was contended by the state at the trial the defendant struck the deadly blow. We think the evidence given by the witness must have been very damaging to the defendant, notwithstanding the fact that it was not shown that he in fact made such a statement to Mary Lusich. She was not asked concerning the statement, and she alone, aside from the defendant, could testify whether or not such a statement had been made to her. No person on trial for a crime should be subjected to the prejudice which such a statement would engender until it is shown that he made the statement. It is contended on the part of the state that the question was asked for the purpose of showing the bias of the witness. Conceding for the sake of this case that such evidence would accomplish that purpose, it would not be justified without first connecting the defendant with such statement. Substantially the same question was before the court in State v. Beatty, 45 Kan. 492, 25 Pac. 899, where it was held that such an examination was reversible error.

For the error mentioned in refusing to sustain the objection, the judgment is reversed, and the case remanded for a new trial.

McCARRAN, C. J., concurring:

I concur in the order and in all phases of the opinion of Mr. Justice COLEMAN, save and except that which deals with instruction No. 27, as given by the trial court. As to this instruction, however, I am not in accord with the views of my learned associate.

In this case the appellant was charged with the crime of murder. He relied on a defense of justifiable homicide. The court gave the following instruction:

"You are instructed that no provocation can justify or excuse homicide, but may reduce the offense to manslaughter. Words or action, or gestures, however grievous or provoking, unaccompanied by an assault, will not justify or excuse murder; and, when a deadly weapon is used, the provocation must be great to make the crime less than murder."

The instruction as given is assigned as error. It cannot, in my judgment, receive the sanction of this court. To approve of the giving of this instruction would be to strike down the defense of justifiable homicide. The very first assertion in the instruction declares "that no provocation can justify or excuse homicide." This very assertion, standing alone, would nullify the provisions of our statute defining "justifiable homicide." There (Rev. Laws, 6394) it is declared:

"Justifiable homicide is the killing of a human being in necessary self-defense or in defense of habitation, property, or person, against one who manifestly intends, or endeavors, by violence or surprise, to commit a felony, or against any person or persons who manifestly intend and endeavor, in a violent, riotous, or tumultuous manner, to enter the habitation of another, for the purpose of assaulting or offering personal violence to any person dwelling or being therein."

Section 6396, Rev. Laws, provides:

"Homicide is justifiable when committed by a public officer, or person acting under his command and in his aid, in the following cases:

"(1) In obedience to the judgment of a competent court.

"(2) When necessary to overcome actual resistance to the execution of the legal process, mandate or order of a court or officer, or in the discharge of a legal duty.

"(3) When necessary in retaking an escaped or rescued prisoner who has been committed, arrested for, or convicted of a felony; or in arresting a person who has committed a felony and is fleeing from justice; or in attempting, by lawful ways or means, to apprehend a person for a felony actually committed; or in lawfully suppressing a riot or preserving the peace."

Section 6397, Rev. Laws, provides:

"All other instances which stand upon the same footing of reason and justice as those enumerated, shall be considered justifiable or excusable homicide."

Section 6398, Rev. Laws, provides:

"Homicide is also justifiable when committed either—

"(1) In the lawful defense of the slayer, or his or her husband, wife, parent, child, brother or sister, or of any other person in his presence or company, when there is reasonable ground to apprehend a design on the part of the person slain to commit a felony or to do some great personal injury to the slayer or to any such person, and there is imminent danger of such design being accomplished; or,

"(2) In the actual resistance of an attempt to commit a felony upon the slayer, in his presence, or upon or in a dwelling, or other place of abode, in which he is."

Section 6399 makes provision as to the burden of proving circumstances of mitigation or justification of homicide.

Section 6401 provides:

"The homicide appearing to be justifiable or excusable, the person indicted shall, upon his trial, be fully acquitted and discharged."

Section 6402 provides:

"If a person kill another in self-defense, it must appear that the danger was so urgent and pressing that, in order to save his own life, or to prevent his receiving great bodily harm, the killing of the other was absolutely

necessary; and it must appear, also, that the person killed was the assailant, or that the slayer had really, and in good faith, endeavored to decline any further struggle before the mortal blow was given."

Justifiable or excusable homicide has been repeatedly dealt with by this court. The law of the subject is expressed in State v. Grimmett, 33 Nev. 531, 112 Pac. 273, where it is said:

"The law is well established that where a person, without voluntarily seeking, provoking, inviting, or willingly engaging in a difficulty of his own free will, is attacked by an assailant, and it is necessary for him to take the life of his assailant to protect his own, then he need not flee for safety, but has the right to stand his ground and slay his adversary."

The same principle is involved in State v. Forsha, 8 Nev. 140. The question was also dealt with by this court in the case of State v. Smith, 10 Nev. 106.

As said in the case of Maher v. People, 10 Mich. 212, 81 Am. Dec. 781:

"Homicide, or the mere killing of one person by another, does not, of itself, constitute murder; it may be murder, or manslaughter, or excusable or justifiable homicide, and therefore entirely innocent, according to the circumstances."

In Commonwealth v. Webster, 5 Cush. (Mass.) 295, 52 Am. Dec. 711, it is said:

"Homicide, of which murder is the highest and most criminal species, is of various degrees, according to circumstances. The term, in its largest sense, is generic, embracing every mode by which the life of one man is taken by the act of another. Homicide may be lawful or unlawful; it is lawful when done in lawful war upon an enemy in battle; it is lawful when done by an officer in the execution of justice upon a criminal, pursuant to a proper warrant. It may also be justifiable, and of course lawful, in necessary self-defense."

We are referred to the decisions of this court in the cases of State v. Anderson, 4 Nev. 265, and State v.

Raymond, 11 Nev. 98. They are in no wise applicable to the question raised here. The rule asserted in those cases is that where there is an intent to kill upon the part of the person taking the life of another, or when the act is one which would otherwise be murder, no words of reproach, no matter how grievous, or however abusive and insulting, are a sufficient provocation to free the slayer from the guilt of murder. This rule has been consistently adhered to, not only by this court, but by many others, and we do not find it at all necessary to disturb such doctrine in this case. Again, we are referred to the case of State v. Crozier, 12 Nev. 300. The only application that this latter case can have to the matter at bar is that it may apply to the latter part of the instruction as given; that is, it may sanction the doctrine that, where a homicide was committed with a deadly weapon, the provocation must have been very great to warrant an inference that it was done in the heat of blood to lower the grade of the crime from murder to manslaughter. Neither of the cases last referred to bears to any extent whatever on the objectionable feature designated in the instruction as given by the lower court in the case at bar. The positive assertion found in the instruction here, to the effect that no provocation can justify or excuse homicide, removes the case at bar from the effect of any of the decisions just referred to.

It will not do to say that another instruction correctly defined the law of justifiable homicide. Where a jury is instructed, by one assertion coming from the court that the defendant has the right of self-defense, and by another assertion, coming from the same court, that no provocation can justify or excuse homicide, the latter is not cured by the former.

In the case of State v. Scott, 37 Nev. 412, 142 Pac. 1053, we laid emphasis on the rule which we find to be of general acceptation that where a record in a criminal case shows that the court differently defined the law upon any given subject, one clause being correct, the

other erroneous, injury must be presumed to follow from such a state of facts, unless the record clearly shows that no injury resulted therefrom. To the same effect is the case of State v. Ferguson, 9 Nev. 106. The holding of this court in the last-cited case was cited approvingly by the Supreme Court of Washington in the case of McClaine v. Territory, 1 Wash. 345, 25 Pac. 456.

To my mind it would be unreasonable to say that, where a defendant in a criminal case interposed a defense of justifiable or excusable homicide, the court in giving the law to the jury could instruct them that no provocation can justify or excuse homicide, without thereby taking from him every element of his defense, thus committing irreparable injury. The statute law of the state in express terms provides that one accused of murder may interpose a plea of self-defense. For us to sanction the instruction as given in this case would be equivalent to a setting aside of the statute. We are unable to see our way clear to do this.

The judgment and order appealed from must be reversed.

ON PETITION FOR REHEARING

*Per Curiam:*

Rehearing denied.